The People of the State of New York, Respondent, v
Jason Pacifico, Appellant.

First Department, August 4, 1983

APPEARANCES OF COUNSEL

*Lawrence Hochheiser* of counsel (*Kenneth J. Aronson*
with him on the brief; *Hochheiser & Aronson,* attorneys),
for appellant.

*John Latella* of counsel (*Amyjane Rettew* with him on the
brief; *Robert M. Morgenthau, District Attorney,* attorney),
for respondent.

OPINION OF THE COURT

Sullivan, J.

The only issue is the propriety of the denial, after a
hearing, of defendant's motion to suppress physical evi-
dence. Subsequent to the hearing defendant pleaded guilty
to criminal possession of a controlled substance in the third
degree, and criminal possession of a weapon in the third
degree, and was sentenced.

At about 6 P.M. on January 31, 1981, Police Officers
Joseph and Kelly, in uniform, on motor patrol, responded
to a report from the emergency radio dispatcher of a man

with a gun in a black Chevrolet Corvette, parked across the street from the entrance to the St. Regis Hotel at 2 East 55th Street. Within minutes the officers parked at the corner of Fifth Avenue and 55th Street and began walking east on 55th Street toward the St. Regis. Across the street from the hotel they saw a black Chevrolet Corvette pulling out from a curbside parking space. With guns drawn the officers crossed the street and approached the Corvette on the passenger's side. As they did so, they saw a gun on the passenger's seat. Since the car doors were locked, the officers directed the driver, defendant, to stop the car and get out. When he failed to comply Officer Kelly ran around the back of the car to the driver's side.

Meanwhile another police officer, Detective Handy, who together with Officers Mullane and Mora had also responded, approached the Corvette on the driver's side, also with his gun drawn. As he did so, a man, pointing towards the other side of the street, came down the steps of the St. Regis yelling, " 'He's got a gun.' " Officer Mullane, trailing Detective Handy by a few feet, told the man to get back. When Detective Handy reached the Corvette, Officer Joseph signaled to him that there was a gun on the passenger's seat. Detective Handy banged on the window with his gun and ordered defendant out of the car. Defendant responded by opening the door to the driver's side. As soon as the car stopped rolling Detective Handy pulled him out of the car. Once defendant was removed from the car Officer Kelly seized the gun, a 9 mm. Luger pistol. Defendant was arrested, handcuffed and taken to the police station, where he was searched. Two plastic bags containing a total of three and one-quarter ounces of cocaine were found in a jacket pocket. Defendant also had $3,209 in his possession

Defendant testified in his own behalf. Admitting possession of the gun, cocaine and money, he denied that the gun was on the passenger's seat, and claimed that it was concealed under the driver's seat from where one of the officers recovered it after he had been removed from the car. He testified further that he was under the influence of cocaine at the time and that the officers struck him with billy clubs before placing him under arrest.

It is undisputed that defendant's car, a 1981 Corvette, had tinted windows. Photographs were introduced to demonstrate that even with the tinted windows of the car closed a person standing next to a Corvette on the passenger's side could see a gun lying on the passenger's seat. As part of the hearing the court itself viewed a Corvette similar to defendant's and concluded that a person standing where Officer Joseph testified he stood when he first saw the gun could see the passenger seat. Notwithstanding, the court, while accepting the testimony of the police officers in all other respects, rejected their testimony as to the viewing of the gun. It also rejected defendant's story of being beaten, as well as his testimony that his car was parked and not pulling out from a space when the police approached. Despite its rejection of the People's argument that the seizure of the gun was justified by the "plain view" exception to the warrant requirement, the court, citing this court's decision in *People v Foster* (83 AD2d 282), held that the police officers "acted within the law and reasonably in taking [the] gun." While we believe that the credible evidence at the hearing established that defendant's gun was in plain view, we also find that the police officers had probable cause to arrest defendant and to search both him and his car.

At the outset we note that the court did not offer any explanation as to why it rejected the officers' testimony concerning their initial observation of the gun. It did not cite any inconsistencies or confusion in their accounts; it credited the balance of their testimony; and even satisfied itself, by personally viewing a similar Corvette, that a person in Officer Joseph's position could, in fact, see the passenger seat. In addition, the area in which defendant's car was parked was well lit by street lights and the marquee of the St. Regis Hotel. Thus, it appears that the court was not troubled by any aspect of the officers' conduct but, rather, by the anomaly of a motorist leaving a gun exposed on the passenger seat of a car parked on a busy Manhattan street. Yet, defendant, by his own admission, was under the influence of cocaine, recently snorted, and which apparently caused an epileptic fit on his arrival at the station house. While, under ordinary circumstances,

leaving an illegal firearm on a car seat might appear bizarre, such an act was quite consistent with defendant's behavior that evening.[1]

The only evidence of a hidden gun came from defendant. Since the court discredited the balance of his implausible version of the incident, we can discern no reason why it would accept his self-serving claim that he had hidden the gun under the seat. Nothing in the record indicates that this particular aspect of defendant's version was less fanciful than any other testimony he gave. Furthermore, his concession that he was high on cocaine and his deportment at the time of arrest and thereafter make it difficult to believe anything that he related regarding the incident. Significantly, the suppression court made no finding of fact as to where the gun was actually discovered. Since this court is empowered to make the findings that the suppression court failed to make (*People v Casado,* 83 AD2d 385, 387), we find that the gun was in open view on the front seat, as Officers Joseph and Kelly testified, and was seized by Officer Kelly after defendant was removed from the car.

It is quite possible, of course, that the court did not believe that the gun could be viewed through the tinted glass of the windows, but that once the car door was opened it could be seen in open view on the passenger's seat merely by peering into the car. Even defendant does not dispute that on the basis of the information received the officers had the right to approach him and make inquiries, order him out of the car, and frisk him if they felt that their safety was imperiled. (See *People v McLaurin,* 43 NY2d 902, revg 56 AD2d 80, on dissenting opn.) Since the court had properly found that the officers were justified in removing defendant from the car, such a minimal intrusion of defendant's privacy as peering into his automobile would not have been disproportionately intrusive, given the predicate for the officers' conduct. (*People v Simmons,* 83 AD2d 79, 80.) Thus, whether they observed the gun through the

---

1. Further evidence of defendant's irrational conduct that evening can be found on the tape recording of the two 911 calls which the court inexplicably excluded. In each the caller indicated that the man in the car with a gun was "going mad" and that he was "doing very strange things in the car * * * like on drugs." While ordinarily these statements, if offered for truth, would constitute hearsay, they are admissible in a suppression hearing "to establish any material fact." (See CPL 710.60, subd 4.)

tinted windows, as claimed, or only after defendant had been removed from the car, the gun was properly seized.

Even assuming, *arguendo,* that the gun was hidden under the seat, suppression does not necessarily follow. Contrary to defendant's argument, a court need not suppress evidence simply because it discredits some of the testimony offered by the People in support of the legality of police conduct, as long as sufficient credible evidence exists to support the court's factual findings and conclusion that the officers' actions were legal. By presenting evidence sufficient to support the court's findings, the People met their burden of going forward (see *People v Berrios,* 28 NY2d 361) and the court may rely on any legal justification for police conduct for which there is factual support in the record, irrespective of whether it has found all of the People's evidence credible. (See *People v Caldwell,* 107 Misc 2d 62.) In *Caldwell (supra),* the reviewing court found that the evidence did not support the People's contention that the seizure of a gun from the defendant's car was justified by the plain view doctrine. It nevertheless upheld the trial court's denial of the suppression motion on the ground that there was probable cause to search the car.

Similarly, in this case, the credible evidence supports a finding that the police had probable cause to search his car. Responding to an emergency dispatcher's call that a man with a gun was in a parked car across from the St. Regis Hotel,[2] the officers found the car, as described. As they approached defendant's car, a private citizen ran out of the hotel, pointed to the black Corvette, and yelled, " 'He's got

---

**2.** In their brief the People contend that the dispatcher told the responding officers that the man had " 'pointed the gun' " and urged them to " 'make it snappy before he kills somebody.' " Since such testimony does not appear in the transcript of the officers' testimony, we conclude that it must be part of a tape, not stenographically recorded, which contained both the original 911 calls and the police radio dispatcher's report. The furnishing of such particulars, of course, bespeaks personal knowledge on the part of the caller with respect to the information being imparted (see *People v Elwell,* 50 NY2d 231, 241) and bears on probable cause. The other half of the so-called *Aguilar (Aguilar v Texas,* 378 US 108) test, the reliability of the informant, would have been satisfied by the on-the-scene interview of the citizen informant. Although the suppression court apparently listened to a segment of the tape, it was not stenographically recorded. This void in the record leaves us at a disadvantage in assessing the quantum of proof offered in support of probable cause.

a gun.'" The officers could reasonably conclude that this was the same person who had initially called the police to report the incident. Thus, the officers received additional, on-the-scene information from a citizen informant confirming the dispatcher's report.

Police officers have a right to rely upon information furnished by private citizens who report crimes that they have witnessed. (See *People v Hicks*, 38 NY2d 90, 94; *People v Bruce*, 78 AD2d 169, 173.) The reliability of this citizen informant was demonstrated by the fact that he revealed his presence immediately upon the officers' arrival, as well as his obvious familiarity with the situation, and his apparent availability for further questioning, thereby exposing himself to the risk of prosecution for providing false information to the police. (See Penal Law, § 240.50; *People v Bruce, supra*, p 173.) Parenthetically we note that the informant remained at the scene to assist the police and was eventually taken to the station house.

On the basis of the information supplied to them by the dispatcher and the warning from the citizen informant confirming the dispatcher's report, the officers had probable cause to arrest defendant for unlawful possession of a gun, and to search him. Once they discovered that he did not have the gun on his person, they had probable cause to believe that the gun was in his car, from which he had just exited, "the next logical place". (*People v Cofield*, 55 AD2d 113, 115; see *People v Cabral*, 91 AD2d 944.) A warrantless search of the car would, therefore, be justified, at the very least, by the automobile exception to the warrant requirement. (*People v Orlando*, 56 NY2d 441; *People v Belton*, 55 NY2d 49; see *United States v Ross*, 456 US 798.)

In *Cofield (supra)*, a police officer, responding to a report by witnesses that a young woman was being assaulted at the entrance to a garage at a nearby motel, found a woman at the garage crying. She told the officer (p 114) that her assailant had a gun and was "'going out of the garage in the car.'" The only car leaving the garage was Cofield's. The officer stopped the car, frisked Cofield, but found no gun. He then searched the car and found a gun in the passenger compartment. This court concluded that, based

on the information he had received, the officer had probable cause to arrest the defendant for assault and that the search of the car, as an incident thereto, was lawful. (See, also, *People v Hyter,* 61 AD2d 990 [police had probable cause to arrest the defendant for menacing and assault on the basis of statements from a mother and her son that he had threatened them with a revolver]; *People v Odom,* 50 AD2d 936 [police had probable cause to arrest the defendant for menacing and assault on the basis of information received from witnesses to a street fight].)

*People v Blanks* (35 NY2d 942), and *People v Bluitt* (33 NY2d 997), upon which defendant relies, are distinguishable since the police actions therein were taken solely on the basis of an anonymous call or tip from an unidentified person. Here, the dispatcher's report was confirmed on the scene by the citizen informant.

Accordingly, the judgment, Supreme Court, New York County, rendered June 11, 1982 (DONTZIN, J., plea and sentence; PREMINGER, J., suppression hearing) convicting defendant of criminal possession of a controlled substance in the third degree and criminal possession of a weapon in the third degree, should be affirmed.

SANDLER, J. P., ROSS, CARRO and MILONAS, JJ., concur.

Judgment, Supreme Court, New York County, rendered on June 11, 1982, unanimously affirmed. The case is remitted to the Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (subd 5).