■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WILLIAM TORRUELLAS, Also Known as WILLIAM QUINONES, Respondent.—Order, Supreme Court, New York County (William Davis, J.), entered February 4, 1986, granting reargument and, upon reargument, suppressing the fingerprint evidence, reversed, on the law and on the facts, the motion to suppress the fingerprint evidence denied and the matter remanded for further proceedings.

Two plainclothes policemen, Officers Knoth and Murphy, observed defendant during daylight hours walking down the street carrying a 25-inch unboxed television set in his arms. Since the neighborhood was one known for a high rate of daylight burglaries, the officers approached defendant and asked him where he had obtained the television and also for identification. Defendant produced two pieces of identification and said that he got the television from "a brother." Asked where the brother lived, defendant gave an address around the corner a quarter block away. He did not, however, identify

any particular apartment. The hearing court found that the officers then put the television in their unmarked car, told defendant to get into the car, and drove him to the address he had given. Arriving there, Officer Murphy got out of the car to "check out" the building at the address defendant had given. In prompt order, Officer Murphy radioed back to Officer Knoth that it appeared that an apartment on the top floor had been burglarized. Overhearing the transmission, defendant fled and escaped. Several hours later, the resident of the apartment reported a burglary. As proof that defendant was the perpetrator, the People intend to offer in evidence fingerprints taken from the burglarized apartment which they say are defendant's.

The hearing court held that the officers made an arrest without probable cause which tainted the identification cards, the television set and "any statements" defendant may have made during the encounter. Not tainted, however, were the fingerprints found in the burglarized apartment. These, said the hearing court—apparently addressing itself to and rejecting an argument tentatively raised by defendant in closing argument that it is not standard police procedure to "dust" for fingerprints unless there is a suspect—would have been discovered even if defendant had not been detained.

Defendant moved to reargue so much of his motion as sought suppression of the fingerprints, arguing that the police would not have been able to identify the fingerprints discovered at the burglarized apartment as his own if they did not already have his fingerprints on the television set which the court had suppressed as unlawfully seized. Granting reargument, the court reversed itself and suppressed the fingerprints on the ground that the People did not meet their burden of proving beyond a reasonable doubt that the fingerprints would have been inevitably discovered. The People then requested an opportunity to present proof relating to their fingerprint identification of defendant, which application was denied. The People appeal only from the order granting reargument and suppressing the fingerprints.

We note initially that the grant of reargument superseded the original order (Dennis v Stout, 24 AD2d 461) and brings up for review the original determination and entire record of the suppression hearing. Thus, all the issues addressed in the hearing are before us. Moreover, the parties have fully briefed the legality of the original stop and the propriety of the police officers' conduct which followed. Since we believe that the motion was improperly decided initially, as well as on reargu-

ment, on review of the entire record, we reverse the court's determination in its entirety and deny the motion to suppress. Inasmuch as the People seek reversal only as to the fingerprints recovered from the burglarized apartment, however, we limit the reversal of the suppression order to that aspect of the physical evidence.

Essentially, the hearing court, without ever specifying at what point or in what manner defendant was restrained, found that once defendant produced identification after the initial stop, the police could no longer detain him. Yet, the court held, defendant was not free to leave. Since the officers lacked probable cause or even a reasonable suspicion to detain defendant further, it found that suppression of the stolen television set, as well as defendant's identification cards, was compelled. The record, however, as well as the court's own findings, fails to support that ruling.

The testimony of Officer Knoth—the People's only witness— which the court found "credible, candid and truthful", refuted any suggestion that defendant was ever in custody. Knoth testified that defendant was neither restrained nor told that he was not at liberty to walk away. Knoth specifically testified that defendant was never placed in the police car, never frisked, and never transported anywhere, by any means. Defendant, on the other hand, claimed that after he responded to Knoth's initial inquiries, he was frisked, forced to get into the police car, and driven around until he somehow left the car at some vague point.[1]

Defendant's claim that he was forced to get into the police car and driven several blocks down West 75th Street defies belief. Knoth had testified that defendant was only a quarter of a block away from the burglarized apartment on 73rd Street when the officers approached him. Defendant himself conceded that he had told Knoth he had gotten the television "down the street." Defendant's claim that after being forcibly detained, made to get into the car, and driven around, he then simply "got out of the car and left" demonstrates how incredible was his testimony. Obviously, if the officers had been suspicious enough to detain defendant forcibly, he would not have been allowed to stroll away. Yet, inexplicably, the court made a tentative finding that defendant had been forced to get into the police car.

When the prosecutor noted that the latter finding was

---

1. The court refused to allow the prosecutor to cross-examine defendant about this part of his story.

inconsistent with its earlier finding as to Officer Knoth's credibility, the court stated that the difference was "not really critical." It then ruled that defendant "was in custody on the street whether or not he was placed in the car subsequent-[ly]." It clarified its ruling by adding: "Before he was in the police car, he was not free to go. They made the inquiry, he made the identification. At that point he should have been able to walk away. He was not."

The police officers acted properly in approaching defendant and requesting that he explain where he had gotten the television set and that he produce some identification. All that is required to support such an approach is "some objective credible reason for that interference not necessarily indicative of criminality". *(People v De Bour,* 40 NY2d 210, 223.) Clearly, Officer Knoth had an objective credible reason for his inquiries. Defendant had been observed struggling under the weight of a heavy television set, which was not in any type of container, in a residential neighborhood known for its high incidence of daytime burglaries. In response to the officer's questions, defendant said he had obtained the set from "a brother" who lived at 15 West 73rd Street. The court specifically found that the officer's testimony to this effect was true, and that defendant had provided the 15 West 73rd Street address in response to Knoth's first inquiries. Armed with that information, Sergeant Murphy decided to walk the quarter of a block to the address given by defendant to make sure that everything was all right. Officer Knoth and defendant remained on the sidewalk. Defendant was never told that he could not leave. In the approximately five minutes that it took for Murphy to radio back that "it looks like a burglary or break-in", defendant, as Knoth testified, was free to leave.

This court is empowered to make its own factual findings or those that the hearing court should have made. (CPL 470.15 [3] [b]; *see, People v Pacifico,* 95 AD2d 215, 217.) On this record, and crediting Sergeant Knoth's testimony, as did the hearing court, we accept the People's account of the incident and reject defendant's rather fanciful testimony that he was frisked, restrained and placed in a police car, and yet allowed to walk away once the burglary was discovered. Since discovery of the fingerprints in the burglarized apartment was not the product of any illegal custody of defendant, suppression of his fingerprints on that ground was erroneous.

Even if we were to accept the testimony that defendant was restrained and forcibly placed in the police car, it is clear that

he was not in custody until fairly late in his encounter with the police officers, that is, not until after their initial observations and subsequent questions, which were justified. Thus, all of the information used to discover defendant's fingerprints was obtained before, and independent of, the purported illegal custody that followed.

Accordingly, even under the theory that defendant was placed in custody at some later point, the information given by defendant—the location of the building where he purchased the television—resulted from a reasonable and proper police inquiry, as the court conceded.[2] Consequently, it is clear that defendant's fingerprints were found solely as a result of information obtained before any illegality occurred. The police officers already knew about the suspicious television and had the address of the building from which it had come. It was only this information that led to the apartment and the fingerprints found inside. Since there was no causal connection between the alleged subsequent illegal detention and the information that led the police to the burglarized apartment, it is clear that the recovery of defendant's fingerprints therein was derived from an independent source. Thus, discovery of the fingerprints was free of the taint of any earlier illegal detention. Concur—Sullivan, J. P., Ross and Kassal, JJ.

Rosenberger, J., concurs in the result only.

---

2. The court also suppressed defendant's statements because he was "in custody" and had not been advised of his *Miranda* rights. The address of the burglarized apartment and defendant's name, however, clearly could not have been among the statements suppressed, since the court did not find that defendant was in custody until after he had provided this information. Since defendant, in his motion papers, alleged that he had also made statements while in the police car, it was those unspecified statements, no doubt, which the court meant to suppress.