■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER MARCH, Appellant. [685 NYS2d 88] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Eng, J.), rendered June 2, 1997, convicting him of criminal possession of a weapon in the third degree (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review an order of the same court (Rios, J.), dated November 19, 1996, which, upon reargument, adhered to a prior determination, made in an order dated October 8, 1996, which denied that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

The Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress a handgun and machine gun found inside a van he was driving at the time he was stopped. The evidence adduced at the suppression hearing established that at approximately 10:45 P.M. on January 16, 1996, Officer Arena and his partner Officer Feegan were on duty in an unmarked patrol car when they received a radio call regarding "a suspicious male knocking on the door" at an address in Queens. Upon arriving at the address, the officers saw a van, without its lights on, double-parked in front of the location. The van then moved a few houses away and again double-parked.

The officers approached the van on foot. Feegan asked the defendant, who was in the driver's seat, for his license, and for an explanation as to why the van was double-parked. The front passenger seat was empty. The codefendant Gregory Duncley was sitting in a back seat, and Arena recognized him as an individual he had arrested about one month earlier for an armed robbery.

The defendant and Duncley were ordered to step out of the van. Arena frisked Duncley and removed a pair of handcuffs. When asked to explain why he had the handcuffs, Duncley said, "I just like handcuffs". Arena then stepped into the van and scanned the interior for about 10 seconds with the aid of a flashlight. He observed the butt of a gun leaning up against the side of the van on the driver's side. Nothing obstructed his view of the gun. Arena indicated to Feegan that he found a gun and placed Duncley in handcuffs. The defendant ran away but was apprehended by Feegan after a short chase. A subsequent search of the van disclosed a gym bag containing a loaded machine gun. After searching the van, Arena spoke to the elderly woman who made the 911 call, but she was not able to identify the man who knocked on her door.

The general rule is that a police officer "acting on reasonable suspicion that criminal activity is afoot and on an articulable basis to fear for his own safety may intrude upon the person or personal effects of the suspect only to the extent that is actually necessary to protect himself from harm" (*People v Torres*, 74 NY2d 224, 226). Once the suspects have been removed from a vehicle and patted down, and any immediate threat to the officer's safety has been eliminated, it is, as a general rule, unlawful for the officer to then enter and search the passenger compartment of the vehicle absent probable cause (*see, People v Carvey*, 89 NY2d 707; *People v Torres, supra*). The general rule is not inflexible, however, and probable cause is not always

required as a predicate for a limited intrusion into the passenger compartment of a vehicle. Facts revealed during the encounter may lead to the conclusion that there is a weapon located within the vehicle which presents a danger to the officers (*see, People v Carvey, supra,* at 710-711; *People v Torres, supra,* at 231, n 4; *see also, People v Vehap,* 234 AD2d 210, 211; *People v Cisnero,* 226 AD2d 279).

Contrary to the defendant's contention, the evidence established that the police had reasonable suspicion that criminal activity was afoot, based on the radio call about a suspicious man banging on a door; the proximity of the van, double-parked and dark, to that location; the empty passenger seat; the handcuffs possessed by Duncley (an offense which may be punishable by fine or imprisonment [*see,* Administrative Code of City of NY § 10-147]), and Arena's knowledge of Duncley's prior involvement in an armed robbery. Based on the suspicious circumstances, and Arena's knowledge that Duncley had been arrested just one month previously for participating in an armed robbery, the officer was justified in taking the minimally-intrusive step of entering the van to scan its interior for weapons.

We note that the facts do not present a situation where the officer entered the vehicle in order to illuminate with his flashlight those portions of the interior which could not have been seen from outside the vehicle and which the defendant legitimately expected to remain private (*see, e.g., People v Hernandez,* 238 AD2d 131; *People v Young,* 207 AD2d 465; *see also, People v Class,* 63 NY2d 491, *revd* 475 US 106). The officer did nothing more intrusive than step into the van, which was high off the ground, in order to more readily observe its interior, and the court accepted as credible his testimony that the butt of the gun was in plain view.

Once the police found the handgun inside the van, there was probable cause for the defendant's arrest and for the subsequent search of the van, which revealed the machine gun (*see, People v Yancy,* 86 NY2d 239, 245). The defendant's motion to suppress the weapons was therefore properly denied. No other issues having been raised on appeal concerning the defendant's conviction, the judgment is affirmed. Miller, O'Brien and Santucci, JJ., concur.

Bracken, J. P., dissents and votes to reverse the judgment, vacate the order dated November 19, 1996, and so much of the order dated October 18, 1996, as denied that branch of the defendant's omnibus motion which was to suppress physical evidence, grant that branch of the motion, and dismiss the

indictment, with the following memorandum: I am of the opinion that the warrantless search of the defendant's van was contrary to the Search and Seizure Clauses of the Federal and State Constitutions (US Const 4th, 14th Amends; NY Const, art I, § 12).

The facts are accurately stated in the opinion of my colleagues in the majority. One fact that bears emphasis, however, is that the officer who conducted the search admittedly entered into the van before observing the contraband which he later seized. I cannot agree with the implication of the majority opinion that the "plain view" doctrine applies under these circumstances. One condition to the application of the "plain view" doctrine is that "the police [be] lawfully in the position from which the object is viewed" (*People v Diaz*, 81 NY2d 106, 110; *see also, People v Saurini*, 201 AD2d 869). "It is * * * an essential predicate * * * that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed" (*Horton v California*, 496 US 128, 136). Thus, the seizure of evidence in the present case can be justified only if the officer's warrantless entry into the van itself was legal.

The warrantless intrusion into the van carried out in this case can be justified, under State Constitutional law, only if the officer had a valid basis for concluding "that a weapon located within the vehicle present[ed] an actual and specific danger to the officers' safety" (*People v Torres*, 74 NY2d 224, 231, n 4; *see also, People v Snyder*, 178 AD2d 757, *affd* 80 NY2d 815; *People v Mercado*, 165 AD2d 910). This is essentially in conformity with Federal law, which, under circumstances such as those presented here, permits a warrantless search of a vehicle only where police have "reasonable suspicion based on specific and articulable facts to believe that [an occupant] may be armed and dangerous" (*Minnesota v Dickerson*, 508 US 366, 374; *Michigan v Long*, 463 US 1032). According to the holding in *Michigan v Long* (*supra*) the police must also believe that the suspect or suspects "may gain immediate control of the weapons" (463 US, at 1049-1050; *see also, United States v Brown*, 133 F3d 993 [7th Cir], *cert denied* 523 US 1131; *McCardle v Haddad*, 131 F3d 43 [2d Cir]; *United States v Hill*, 114 F3d 1189 [1997 WL 289655] [6th Cir]).

The facts as recounted in the majority opinion furnish no basis upon which to conclude that the officers involved in this search had any reason to suspect that the occupants of the van were armed and dangerous which would give rise to a justifiable fear for their safety. Under these circumstances, there

was no justification for conducting a warrantless search of the van in the conceded absence of probable cause. To say that the relatively innocent circumstances present in this case were sufficient to justify a warrantless search of the van seems to me to create a conflict with binding precedent which holds that such a search cannot be justified even when the officers observe a holster inside the vehicle (*People v Snyder, supra*) and even when one of the occupants of the vehicle is wanted for murder and reported to be armed (*People v Torres, supra*).

For the foregoing reasons, I dissent, and vote to reverse.