The defendant was convicted of criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. Prior to trial, the defendant moved to suppress physical evidence — a gun — which was recovered by a police officer during a traffic stop. At the suppression hearing, Police Officer Marique Monzert testified that, while on duty, she received a radio run regarding a robbery in the vicinity, which *627 described the suspect as a tall, black male wearing a black bubble jacket with a fur-lined hood. The radio run indicated that a black bag with the word “Puma” written on it was taken during the robbery. About 10 to 15 minutes after receiving the radio run, Monzert came upon a person she described as a tall, black male wearing a black bubble jacket with a fur-lined hood, leaning into the passenger side window of a vehicle and talking to the occupants of the vehicle, which included the defendant, who was sitting in the driver’s seat. A witness for the defendant, who was an occupant of the vehicle, testified that the person with whom he and the defendant were talking was the defendant’s cousin, and had approximately the same complexion as the defendant, who was a light-skinned Hispanic man. Monzert did not testify that she observed the suspect give anything to the occupants of the car or that she observed the suspect holding a black bag.
Monzert then drove around the block. Monzert testified that when she next saw the vehicle, it was driving at “a high rate of speed” and she pulled the vehicle over. Monzert acknowledged that, once she approached the vehicle, she knew that the suspect she had seen earlier was not in the car. Monzert observed through the open windows a black bubble jacket and several book bags, some of which were black. Monzert did not state that the black bubble jacket had a fur-lined hood, and she did not voucher the jacket she saw in the car. Monzert also did not testify that she saw the word “Puma” on any of the black bags.
At Monzert’s request, the defendant and his passenger stepped out of the car and stood behind the rear of the vehicle. At that point, Monzert entered the back seat of the vehicle to check if any of the bags had the word “Puma” written on them. Upon entering the car, Monzert observed that the air conditioning vents had been removed from the center console and that there was a firearm inside the console. She then placed the defendant under arrest.
Contrary to the defendant’s contention, the initial vehicle stop was not unlawful. The defendant argues that Monzert did not stop the defendant’s vehicle for a traffic violation, but, rather, to investigate a possible robbery or narcotics transaction. However, “provided a traffic stop is supported by probable cause, ‘neither the primary motivation of the officer nor a determination of what a reasonable traffic officer would have done under the circumstances is relevant’ ” (People v Wright, 98 NY2d 657, 658-659 [2002], quoting People v Robinson, 97 NY2d 341, 349 [2001]; see Whren v United States, 517 US 806 [1996]). Here, since the hearing evidence demonstrated that Monzert *628 had probable cause to believe that the defendant violated Vehicle and Traffic Law § 1180, which prohibits driving a vehicle “at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing,” the initial vehicle stop was not unlawful (see People v Miller, 57 AD3d 568, 570 [2008]; see generally People v Wright, 98 NY2d 657 [2002]; People v Robinson, 97 NY2d 341 [2001]).
The same cannot be said, however, for Monzert’s search of the vehicle. “ ‘[A] police officer acting on reasonable suspicion that criminal activity is afoot and on an articulable basis to fear for his [or her] own safety may intrude upon the person or personal effects of the suspect only to the extent that is actually necessary to protect himself [or herself] from harm’ ” (People v Mundo, 99 NY2d 55, 58 [2002], quoting People v Torres, 74 NY2d 224, 226 [1989]; see People v Carvey, 89 NY2d 707, 710 [1997]). Therefore, “absent probable cause, it is unlawful for a police officer to invade the interior of a stopped vehicle once the suspects have been removed and patted down without incident, as any immediate threat to the officers’ safety has consequently been eliminated” (People v Mundo, 99 NY2d at 58; see People v Carvey, 89 NY2d at 710; People v Torres, 74 NY2d at 226). A “narrow exception” to this rule exists in circumstances where: “ ‘following a lawful stop, facts revealed during a proper inquiry or other information gathered during the course of the encounter lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officer’s safety sufficient to justify a further intrusion, notwithstanding the suspect’s inability to gain immediate access to that weapon’ ” (People v Carvey, 89 NY2d at 710-711, quoting People v Torres, 74 NY2d at 231 n 4; see People v Mundo, 99 NY2d at 58).
Here, in arguing that Monzert’s search of the defendant’s vehicle was lawful, the People invoke this exception, relying upon this Court’s decisions in People v Cameron (6 AD3d 546 [2004]) and People v March (257 AD2d 631 [1999]). In those cases, citing to Torres and Carvey, this Court held that a police officer’s limited search of a vehicle for weapons was permissible in light of certain facts learned by the police officer during the encounter (see People v Cameron, 6 AD3d at 546; People v March, 257 AD2d at 632-633).
Monzert’s search of the vehicle does not fit within the exception to the general rule that probable cause is required to search a vehicle once, as here, the suspects have been removed and patted down without incident. The exception, which is geared toward preventing harm to police officers, allows for a limited *629 search for weapons (see People v Cameron, 6 AD3d at 546; People v March, 257 AD2d at 633). It requires a substantial likelihood of a weapon in the car, and a resulting danger to the officer’s safety that is “actual and specific” (People v Carvey, 89 NY2d at 711).
Monzert specifically testified that she entered the defendant’s vehicle to search the bags in the back seat, to see if any of the bags was the proceeds of the robbery. Monzert never testified that she thought it was substantially likely that there was a weapon in the vehicle or that she perceived some actual and specific threat to her or the other officers’ safety, despite the removal of the defendant from the car (cf. People v Cheek, 18 AD3d 475 [2005]; People v Cameron, 6 AD3d at 546; People v March, 257 AD2d at 632-633). Accordingly, contrary to the People’s contention, probable cause was required to justify Monzert’s search of the vehicle.
To the extent the People argue that probable cause existed for the search, that contention is without merit. Pursuant to the automobile exception to the warrant requirement, a warrantless search of a vehicle is permitted when the police have probable cause to believe the vehicle contains contraband, a weapon, or evidence of a crime (see California v Carney, 471 US 386, 390-392 [1985]; People v Yancy, 86 NY2d 239, 245-246 [1995]; People v Milerson, 51 NY2d 919 [1980]).
Here, the circumstances known to the police at the time of the search did not rise to the level of probable cause. Monzert had observed a person matching a description of a robbery suspect talking to the defendant and his passenger, 10 to 15 minutes after the robbery took place. The suspect was not holding a black bag and was not seen handing anything to the defendant or the passenger. Moreover, the 10 to 15 minutes between the robbery and the suspect’s conversation with the defendant would have given the suspect, if he actually were the perpetrator of the robbery, ample opportunity to store the bag somewhere other than the defendant’s car, or to dispose of the bag. Upon stopping the defendant’s vehicle, Monzert realized that the robbery suspect was not in the car. Under these circumstances, the presence of a black bubble jacket and black book bags in the back of the defendant’s car did not give Monzert probable cause to believe that one of the bags was stolen during the robbery. Rather, at most, Monzert “may have had a reasonable basis for suspecting” that one of the bags might have been the proceeds of the robbery (People v Torres, 74 NY2d at 227). Such suspicion does not permit an officer to search within the passenger compartment of a vehicle (see id,.; *630 People v Vargas, 89 AD3d 771, 772 [2011] [the fact that the police came upon a black male and a Hispanic male in a two-door silver sedan approximately 10 minutes after, and four blocks away from the scene of, a robbery, reportedly committed by a black male and a Hispanic male who fled in a two-door silver sedan, did not give the police probable cause to search the vehicle]).
Since the search of the defendant’s vehicle was unlawful, the Supreme Court should have granted that branch of the defendant’s omnibus motion which was to suppress the gun found in the course of that search (see People v Vargas, 89 AD3d 771 [2011]). Since, without that evidence, there could not be sufficient evidence to prove the defendant’s guilt of criminal possession of a weapon in the second and third degrees, the indictment should have been dismissed (see People v Kevin W., 91 AD3d 676, 678 [2012], affd 22 NY3d 287 [2013]; People v Richards, 32 AD3d 545 [2006]).
In light of our determination, we need not reach the parties’ remaining contentions. Skelos, J.P., Balkin, Leventhal and Sgroi, JJ., concur.