People v Marcial (2022 NY Slip Op 06142)

People v Marcial

2022 NY Slip Op 06142

Decided on November 2, 2022

Appellate Division, Second Department

Chambers, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 2, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
CHERYL E. CHAMBERS
SHERI S. ROMAN
LINDA CHRISTOPHER, JJ.

2017-01368
 (Ind. No. 5477/15)

[*1]The People of the State of New York, respondent,
v
Benjamin Marcial, appellant.

APPEAL by the defendant from a judgment of the Supreme Court (John G. Ingram, J.), rendered December 9, 2016, and entered in Kings County, convicting him of burglary in the second degree (five counts) and criminal possession of stolen property in the fifth degree (four counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Danny Chun, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Patricia Pazner, New York, NY (Alexis A. Ascher of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Sholom J. Twersky, and Rebecca Height of counsel), for respondent.

CHAMBERS, J.

OPINION & ORDER
On January 24, 2015, a police officer initiated a traffic stop of the defendant after observing the defendant commit a traffic violation. The officer who initiated the traffic stop later testified that he recognized the make, model, and license plate of the vehicle, and the physical appearance of the driver, from a "wanted" flyer for a burglary committed two days prior. The first officer called a second officer to the scene, who later testified that he recognized the defendant's face from an "I-card" that had been issued stating that the defendant was wanted for burglary. The first officer took the defendant into police custody, and the second officer stayed with the defendant's vehicle. The second officer retrieved a knapsack from the back seat of the vehicle and, upon opening the knapsack, found a clear plastic bag full of jewelry. The knapsack was later identified by a complainant as having been taken during the burglary of her home. Some of the jewelry recovered from the knapsack was later identified by complainants as property taken during the burglaries of their respective homes.
The defendant moved, inter alia, to suppress the knapsack and the contents of the knapsack as the products of an illegal search. At the suppression hearing, the People and the defendant introduced evidence reflecting differing accounts of how the second officer came to discover the knapsack in the vehicle. The officer testified that he did not notice the knapsack until a female approached him and asked for the bag in the back seat of the vehicle. Two witnesses called by the defendant each testified that they saw the police officers conduct a thorough search of the vehicle after the defendant was in custody, and that the officers discovered the knapsack in the back seat of the vehicle during that search. At the conclusion of the suppression hearing, the People argued, inter alia, that the defendant did not have standing to challenge the recovery of the property, that there was no search because the officer recovered the knapsack in response to a citizen's request for it and the officer was justified in opening the knapsack for safety reasons, and that the knapsack would have been inevitably discovered as part of an inventory search of the vehicle at the police precinct. The Supreme Court determined that the physical evidence was properly recovered pursuant [*2]to the automobile exception to the warrant requirement (see People v Galak, 81 NY2d 463, 467; People v Blasich, 73 NY2d 673, 678), a legal theory not expressly argued by the People. The court determined, among other things, that the I-card issued for the defendant's arrest "described the car, described the burglary, and it's quite natural and reasonable to think that any backpack in that car may contain evidence of this burglary." After a jury trial, the defendant was convicted of four counts of criminal possession of stolen property in the fifth degree and five counts of burglary in the second degree.
The defendant appeals, contending, among other things, that the Supreme Court should have granted that branch of his omnibus motion which was to suppress physical evidence. First, the defendant argues that the court improperly based its refusal to suppress the evidence upon a theory not argued by the People. Second, the defendant argues that, in any event, the facts of the case do not support application of the automobile exception to the search warrant requirement. For the reasons set forth herein, we reject the defendant's first contention, and find merit in the second contention.
I. Supreme Court's reliance upon a theory not expressly argued by the People
With respect to the question of whether the Supreme Court erred in relying upon a legal theory not expressly argued by the People, the defendant and the People dispute, in effect, how narrowly to construe this Court's holding in People v Tates (189 AD3d 1088, 1089-1090). The defendant contends that the case at bar is factually indistinguishable from and controlled by that case. In Tates, the prosecution argued at the suppression hearing that the gun which the defendant sought to suppress was "properly recovered pursuant to an inventory search" of the defendant's vehicle (id. at 1089). The suppression court rejected this argument, but "nevertheless determined that the police had probable cause to search the [vehicle] for a gun pursuant to the automobile exception to the search warrant requirement, a legal theory that was neither advanced nor relied upon by the prosecution at the suppression hearing" (id.). On appeal, this Court reversed on the ground that "the Supreme Court should not have denied the defendant's suppression motion on a theory not argued by the People" (id. at 1089-1090). Here, the defendant contends that, as in Tates, this Court "'cannot uphold conduct of the police, and thereby affirm a trial court's denial of suppression of evidence obtained pursuant to such conduct, on a factual theory not argued by the People before the trial court'" (id. at 1089, quoting People v Nieves, 67 NY2d 125, 135-136).
The People contend that the Supreme Court's ruling may be affirmed because here, unlike in Tates, the People never "affirmatively conceded" that there was not probable cause to support a search (cf. People v Tates, 189 AD3d at 1089), and because the People are not raising a new legal theory for the first time on appeal (cf. People v Nieves, 67 NY2d at 135-136; People v Geddes-Kelly, 163 AD3d 716, 717), but rather defending the reasoning of the court which was fully set forth on the record. The People distinguish Tates, and the earlier precedent upon which it is based, on the ground that in each of those cases, at least one of the following two circumstances existed: either the ground argued by the People for affirming the suppression court's determination was being raised for the first time on appeal, or the ground upon which the suppression court based its determination had been expressly disclaimed by the People as a basis for upholding the search as lawful.
We conclude that the People's reading of Tates is the correct one. Numerous cases, both prior to Tates and after, stand for the proposition that the Appellate Division cannot affirm a suppression court's ruling based upon a particular legal theory that was neither argued by the People at the suppression hearing nor discussed or relied upon by the suppression court in making its determination (see e.g. People v Nieves, 67 NY2d at 135-136; People v Dodt, 61 NY2d 408, 416; People v Benbow, 193 AD3d 869, 872-873; People v Geddes-Kelly, 163 AD3d at 717; People v Thompson, 118 AD3d 922, 924; People v Vargas, 89 AD3d 771, 772). It is also well established that CPL 470.15(1) "precludes the Appellate Division from reviewing an issue that was either decided in an appellant's favor or was not decided by the trial court" (People v Ingram, 18 NY3d 948, 949; see CPL 470.15[1]; People v Concepcion, 17 NY3d 192, 195-196; People v LaFontaine, 92 NY2d 470, 473-474). In the Court of Appeals precedent cited in Tates, the prosecution had attempted to rely, for the first time on appeal, on a legal theory to support the trial court's evidentiary determination that had not been previously argued by the People or relied upon by the trial court (see People v Nieves, 67 NY2d at 129-130, 135-136; People v Johnson, 64 NY2d at 619 n 2).
Tates stands apart from the above cases because it involved reversal of a suppression court's determination where the suppression court itself, and not the Appellate Division, had relied [*3]upon a legal theory never argued by the People (see People v Tates, 189 AD3d at 1089). In Tates, the People had argued at the suppression hearing that the gun which the defendant sought to suppress was properly recovered from the defendant's vehicle "pursuant to an inventory search" (id.). The suppression court rejected the People's argument, but nevertheless determined that the police had probable cause to search the defendant's vehicle "pursuant to the automobile exception to the search warrant requirement, a legal theory that was neither advanced nor relied upon by the prosecution at the suppression hearing" (id.). Significantly, however, the prosecutor in Tates was not merely silent on the potential applicability of the automobile exception. The "prosecutor at the suppression hearing [had] affirmatively conceded that the police lacked probable cause either to arrest the defendant for weapon possession at the scene or to search his vehicle for a weapon, and that the People were relying solely on the theory that the gun was recovered pursuant to a lawful inventory search after the [vehicle] was removed from the location" (id.).
In Nieves, as in Tates, the theory argued by the People on appeal had been expressly disclaimed by the prosecutor during the evidentiary hearing (see People v Nieves, 67 NY2d at 129-130). This Court, as well, prior to Tates, consistently declined to consider, as a ground for affirming the suppression of evidence, a legal theory that was "expressly disclaimed" by the People at the suppression hearing (People v Garcia, 175 AD3d 1319, 1321; People v Henagin, 129 AD3d 864, 865), or a theory regarding which the People successfully prevented the defendant from eliciting relevant testimony at the hearing (see People v Laskaris, 82 AD2d 34, 42).
The narrow reading of Tates advocated by the People is consistent with the approach taken by the Appellate Division, Fourth Department, and the Appellate Division, First Department, in comparable cases involving the suppression court's application of the automobile exception to the warrant requirement (see People v Nichols, 175 AD3d 1117, 1117-1118; People v Pacifico, 95 AD2d 215, 219). The general rule articulated in these cases is that the suppression court is "entitled to consider legal justifications that were supported by the evidence, even if they were not raised explicitly by the People" (People v Nichols, 175 AD3d at 1118; see People v Pacifico, 95 AD2d at 219).
We reject the defendant's contention that his due process rights were violated when the Supreme Court based its determination upon a legal theory not expressly argued by the People. The interests underlying a suppression hearing "do not coincide with the criminal law objective of determining guilt or innocence," and "the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself" (United States v Raddatz, 447 US 667, 678-679). "The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment. If the motion to suppress is denied, defendant will still be judged upon the untarnished truth" (McCray v Illinois, 386 US 300, 307 [citation omitted]). "The exclusionary rule is not aimed at safeguarding the truth-seeking process nor is its underlying purpose to redress any injury to the defendant's privacy. It is a judicially created remedy intended as a means of discouraging police misconduct" (People v Castillo, 80 NY2d 578, 583).
Thus, the due process requirements for a suppression hearing "may be less demanding and elaborate than the protections accorded the defendant at the trial itself" (United States v Raddatz, 447 US at 679; see People v Castillo, 80 NY2d at 582). For example, a suppression court may deny disclosure of the identity of an informant, deny a defendant's motion to compel an undercover police officer to testify at a suppression hearing, limit the defendant's right to compel an identified victim to testify at the hearing, or deny a defendant's motion to inspect a search warrant and supporting documentation (see People v Castillo, 80 NY2d at 583-586). A hearing court also has the discretion to reopen a suppression hearing after the People have rested but before rendering a decision, in order to permit the People to present additional testimony (see People v Cook, 34 NY3d 412, 415, 417).
We therefore agree with the Fourth Department that the Supreme Court "was entitled to consider legal justifications that were supported by the evidence, even if they were not raised explicitly by the People" (People v Nichols, 175 AD3d at 1118; see also People v Pacifico, 95 AD2d at 219), provided that the legal issue considered by the court had not already been "affirmatively conceded" by the People (People v Tates, 189 AD3d at 1089).
II. Applicability of automobile exception to the facts adduced at the hearing
Nevertheless, the record here does not support the Supreme Court's determination that the automobile exception applied.
"[A]bsent probable cause, it is unlawful for a police officer to invade the interior of a stopped vehicle once the suspects have been removed and patted down without incident, as any immediate threat to the officers' safety has consequently been eliminated" (People v Mundo, 99 NY2d 55, 58; see People v Torres, 74 NY2d 224, 226). Pursuant to the automobile exception to the warrant requirement, a warrantless search of a vehicle is permitted when the police have probable cause to believe the vehicle contains contraband, a weapon, or evidence of a crime (see California v Carney, 471 US 386, 390-392; People v Yancy, 86 NY2d 239, 245-246; People v Milerson, 51 NY2d 919).
Here, "the circumstances known to the police at the time of the search did not rise to the level of probable cause" (People v Baksh, 113 AD3d 626, 629; People v Vargas, 89 AD3d 771, 772). The officer who retrieved the knapsack and its contents from the vehicle acknowledged that he did not know "anything else" about the defendant "[o]ther than the I-card," which, according to the officer's testimony, contained information on "the vehicle that was used . . . [i]n the burglary," in addition to the photo and personal information of the defendant. The officer who initiated the traffic stop similarly testified that he recognized the defendant's vehicle from the "wanted" flyer describing the burglary. However, the mere fact that the defendant was driving the same vehicle identified in the I-card and in the wanted poster as having been used to flee the burglaries did not give the police probable cause to conclude that the vehicle contained evidence of the burglaries (see People v Vargas, 89 AD3d at 771-772; see also People v Morris, 153 AD3d 729, 729-730). Moreover, given the passage of a full day's time since the most recent burglaries described in the I-card, and two full days since first set of burglaries described in the wanted poster, there was "ample opportunity" for the defendant to have stored any items that were stolen somewhere other than in the vehicle he used to flee the burglaries (People v Baksh, 113 AD3d at 629). At most, the officers might have had a "'reasonable basis for suspecting'" that the defendant's vehicle contained proceeds of the recent burglaries (id., quoting People v Torres, 74 NY2d at 227). There was also no reasonable basis for the officers to believe that another burglary had just been committed or was afoot (cf. People v Clark, 45 NY2d 432, 438; People v Edey, 183 AD3d 430, 430), as the defendant was apprehended in a different neighborhood than where all of the burglaries occurred, and at the time of his apprehension, a female companion and a young child were traveling as passengers in the defendant's vehicle.
Moreover, because the People were not actively pursuing a legal argument based upon application of the automobile exception, "[l]ittle [to] no effort was made at the hearing" by the People to elicit testimony that would be most relevant to the legal analysis now being defended on appeal (People v Nieves, 67 NY2d at 135-136). Instead, the People elicited testimony from the officer who recovered the knapsack that he "never searched the vehicle," that he stayed with the defendant's vehicle after the defendant was in police custody in order "to safeguard the vehicle," that he did not see the knapsack in the back of the vehicle until a woman approached and asked for it, and that he opened the knapsack "[f]or safety reasons" to "see if there was anything . . . dangerous" in it that could be used against him and his partners. Little to no evidence was elicited to support a finding that the officer who recovered the property from the defendant's vehicle "'ha[d] reason to believe that the car may contain evidence related to the crime for which [he] was arrested'" (People v Blasich, 73 NY2d at 678, quoting People v Belton, 55 NY2d 49, 55). The evidence adduced at the hearing did not reflect that the defendant made any statements suggesting the vehicle contained any contraband, weapon, or evidence of a crime (see People v Johnson, 183 AD3d 1273, 1275; cf. People v Galak, 81 NY2d at 467-468; People v Orlando, 56 NY2d 441, 444-446; People v Cavanagh, 97 AD3d 980, 981). The officers did not testify that they observed any weapon or contraband in plain view (see People v Johnson, 183 AD3d at 1275; cf. People v Blasich, 73 NY2d at 681; People v Page, 137 AD3d 817, 817; People v Jemmott, 116 AD3d 1244, 1246), or that they found any contraband on the defendant's person when he was taken into custody (see People v Johnson, 183 AD3d at 1275; cf. People v Ellis, 62 NY2d 393, 396-397). There is also no testimony suggesting that any "criminal activity was afoot" at the time of the defendant's arrest (People v Johnson, 183 AD3d at 1275; see People v Pastore, 175 AD3d 1827, 1828).
While the People are correct in their contention that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis" (Whren v United States, 517 US 806, 813; see People v Ortiz, 265 AD2d 579, 579), and the proper inquiry is whether "[t]he totality of the information" in the officer's possession "supported a reasonable conclusion" that the defendant had a weapon, contraband, or evidence of a crime in his vehicle (People v Robertson, 109 AD3d 743, [*4]743-744), this argument by the People does not cure the deficiencies in the hearing evidence. Irrespective of the officer's stated motives, a proper application of the automobile exception would have required a showing that the officer who conducted the search had an objective reason to believe that the vehicle driven by the defendant at the time of the arrest contained evidence of the burglaries committed one or two days earlier (cf. People v Baksh, 113 AD3d at 629). The available record does not supply this objective basis.
Furthermore, contrary to the People's contention, the improper admission of evidence cannot be deemed harmless error in relation to any of the defendant's convictions under the circumstances presented (see People v Crimmins, 36 NY2d 230, 242; People v Johnson, 165 AD3d 1168, 1172).
In light of our determination, we need not reach the defendant's remaining contentions.
Accordingly, the judgment is reversed, on the law, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted, and the matter is remitted to the Supreme Court, Kings County, for further proceedings on the indictment.
DUFFY, J.P., ROMAN and CHRISTOPHER, JJ., concur.
ORDERED that the judgment is reversed, on the law, the branch of the defendant's omnibus motion which was to suppress physical evidence is granted, and the matter is remitted to the Supreme Court, Kings County, for further proceedings on the indictment.
ENTER:
Maria T. Fasulo
Clerk of the Court