OPINION OF THE COURT
Chief Judge Wachtler.
 Defendant has been convicted on charges that he possessed cocaine, burglar’s tools and illegal weapons, all of which were found in the automobile that he occupied. The only issue of consequence presented on this appeal is whether defendant’s motion to suppress the evidence found in the car should have been granted. We agree with the courts below that the police did not exceed permissible bounds in searching the car.
I.
At approximately 7:00 p.m. on April 18, 1985, Port Authority Police Officer Curtis King, who was assigned to Kennedy Airport, responded to a report of a suspicious vehicle in parking lot number two at the airport. The officer observed the described vehicle, a brown Plymouth with three male occupants, cruising slowly up an aisle. He noted that the car *676 passed, a number of vacant parking spaces and thus did not appear to be attempting to park. Officer King stopped the vehicle, asked the driver — defendant—a few questions, checked the license and registration and, being satisfied that no crime had been committed, allowed defendant and his two companions to proceed. The officer took note of the vehicle’s license number and continued his patrol.
At about 7:45 p.m. that same evening, Officer King heard a radio report that a car had left parking lot number two without paying. He contacted the officer who had been dispatched to the scene and learned that the license plate of the offending vehicle matched that of the car he had stopped earlier. King remembered that defendant had mentioned that he intended to buy gas at a nearby Amoco station. He drove to the station, where he was soon joined by other officers and where he spotted the car with defendant seated behind the wheel. One of defendant’s companions was in the back seat; the other was just getting into the front passenger seat.
Officer King approached the vehicle and saw on the floor of the passenger side of the front seat a number of tools commonly used to break into cars — a "slim jim”, a lock-punching device, a chisel and a screwdriver. On the front seat was a blue gym bag and on the floor in the rear of the passenger compartment were two parking lot cards. King seized the tools and the cards. Although he did not immediately notify defendant or the other occupants of the car that they were under arrest, he testified at the suppression hearing that the subjects were advised of their rights and that they were not free to leave. According to another officer, at least one of the car’s occupants was handcuffed. Officer King took the three suspects to the Port Authority Police Station. He explained at the hearing that he did not intend to arrest them for theft of services at that time, but he took them to the station to investigate further "since the tools were seen on the floorboard of the vehicle.”
At the station, Officer King asked defendant for identification and defendant, who had earlier identified himself as Harry Blasich, produced identification in the name of Harry Carney. King then placed defendant under arrest for criminal impersonation and ordered the vehicle impounded. A search of defendant’s vehicle followed and the blue gym bag on the front seat was found to contain a .38 caliber revolver, an incendiary device and cocaine.
*677 After being indicted for two counts of criminal possession of a weapon, possession of a controlled substance and possession of burglar’s tools, defendant moved to suppress the physical evidence found in the car. Supreme Court denied the motion, concluding that the search of the vehicle and the bag was authorized under our rulings in People v Belton (55 NY2d 49) and People v Langen (60 NY2d 170, cert denied 465 US 1028). The Appellate Division affirmed, noting that "the failure to pay the parking fee was not a mere traffic violation which would have limited the officer’s subsequent rights to search the vehicle” (People v Blasich, 140 AD2d 361).[1] We also affirm.
II.
It is not contended that Officer King’s initial stop of defendant’s car in the parking lot was impermissible or that it tainted the subsequent search in any way. Nor is there any serious dispute that the officer was entitled to approach the car at the Amoco station or that, from this vantage point, the tools on the floor of the vehicle were in plain view. The hearing court concluded that, based on the radio report that the car had left the parking lot without paying, the suspicious behavior observed by Officer King earlier that evening and the presence of burglar’s tools on the floor of the vehicle, Officer King’s decision to take defendant into custody was proper. This conclusion, which must be construed as a finding that there was probable cause to arrest defendant at the time he was transported to the Port Authority Police Station, was not disturbed by the Appellate Division, is supported by the evidence adduced at the hearing and is, accordingly, not subject to further review by this court (see, People v McRay, 51 NY2d 594, 601).
The only question that remains is whether, under these circumstances, the police were authorized to search the blue gym bag seen on the front seat of the car.
Under United States Supreme Court precedent applying the Fourth Amendment, as a contemporaneous incident to the *678 lawful arrest of an occupant of a vehicle, the police may search the entire passenger compartment of a vehicle and containers found therein without a warrant and without any particularized evidentiary basis for doing so (see, New York v Belton, 453 US 454). This court has not adopted this bright-line approach to automobile searches incident to arrest as a matter of State constitutional law. We have noted, instead, that the search-incident-to-arrest exception to the warrant and probable cause requirements of our State Constitution (see, NY Const, art I, § 12) exists only to protect against the danger that an arrestee may gain access to a weapon or may be able to destroy or conceal critical evidence. Thus, we have held that the scope of such a search must be limited to the arrestee’s person and the area from within which he might gain possession of a weapon or destructible evidence (People v Belton, 50 NY2d 447, 450 [Belton I]; see, People v Smith, 59 NY2d 454).
We have also recognized, however, that when the occupant of an automobile is arrested, the very circumstances that supply probable cause for the arrest , may also give the police probable cause to believe that the vehicle contains contraband, evidence of the crime, a weapon or some means of escape. If so, a warrantless search of the vehicle is authorized, not as-a search incident to arrest, but rather as a search falling within the automobile exception to the warrant requirement (see, People v Belton, 55 NY2d 49, 53-55, supra [Belton II]).
The automobile exception, it should be noted, is an exception only to the warrant requirement; it does not, in contrast to the search-incident-to-arrest exception, dispense with the requirement that there be probable cause to search the vehicle (People v Langen, 60 NY2d 170, 181, supra). Two considerations have generally been cited as justifying the exemption of car searches from the warrant requirement in appropriate circumstances: the reduced expectation of privacy associated with automobiles, and their inherent mobility which often makes it impracticable to obtain a warrant (People v Ellis, 62 NY2d 393, 397; Belton II, supra, at 53).
In light of these considerations, we have held that "where police have validly arrested an occupant of an automobile, and they have reason to believe that the car may contain evidence related to the crime for which the occupant was arrested or that a weapon may be discovered or a means of escape *679 thwarted, they may contemporaneously search the passenger compartment, including any containers found therein” (Belton II, supra, at 55; see, People v Langen, supra, at 172 [search may include locked containers]). It was on the basis of this rule that the hearing court sustained the search of the gym bag in the present case.
Defendant’s challenge to the hearing court’s application of the Belton rule[2] proceeds in two stages. First, he contends that the mere presence of the tools on the floor of the vehicle did not constitute probable cause to arrest him for possession of burglar’s tools because that crime requires possession of the tools under circumstances evincing an intent to use them to commit an offense "involving forcible entry into premises, or * * * larceny by a physical taking, or * * * theft of services” (Penal Law § 140.35). Indeed, defendant contends that the hearing court did not find probable cause to arrest him for possession of burglar’s tools, but concluded instead that Officer King was authorized to take him into custody for theft of services.
The second stage of defendant’s argument is that, if there was probable cause to arrest him only for theft of services, then, under the Belton rule, there was no basis for searching the gym bag. He asserts that the police could not reasonably suspect that the car would contain evidence related to the crime of theft of services beyond the parking lot stubs already found on the floor of the back seat of the car.
We cannot agree with defendant’s initial premise — that there was insufficient cause for an arrest for possession of burglar’s tools or that the hearing court so found. The court ruled on the propriety of the arrest as follows: "Under the circumstances, it was proper for the officer to take the defendant] into custody rather than issue a summons for failure to pay the parking lot fee. Not only was this offense a crime but, in addition, the car had been observed behaving suspiciously in the parking lot just thirty minutes earlier, and when the officer approached it in the Amoco Gas Station, he saw a number of burglar’s tools on the floor in front of the passenger seat.” This conclusion, together with the court’s citation of Belton II (supra) and Langen (supra) for the proposition that the search of the gym bag was authorized, indicates to our *680 satisfaction that the hearing court found both that there was probable cause to arrest defendant for possession of burglar’s tools and that the circumstances surrounding the arrest gave the officers probable cause to believe that the bag would contain further evidence related to that crime. Furthermore, bearing in mind that "[pjrobable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt” (People v Bigelow, 66 NY2d 417, 423), the evidence adduced at the hearing adequately supports those findings.
Nor is it significant under these circumstances that, when Officer King placed defendant under formal arrest at the Port Authority Police Station, the basis for the arrest was criminal impersonation rather than possession of burglar’s tools or theft of services. Although we have stated that a car search under the Belton rule requires "a nexus between the probable cause to search and the crime for which the arrest is being made’’ (People v Langen, supra, at 181 [emphasis added]), nothing in our decisions suggests that the emphasized language refers only to charges formally announced by the arresting officer and we perceive no reason to adopt such a narrow, formalistic approach today.
The nexus requirement was articulated in Langen as a means of distinguishing a search under the automobile exception recognized in Belton II, during which a search of a closed container outside the arrestee’s reach is permissible, from a search incident to arrest, which is governed by stricter temporal and spatial limits (People v Langen, supra, at 181). We noted that the broader scope of a Belton search is justifiable because it can only be conducted if there is probable cause to search the car, whereas a search incident to arrest may be conducted without probable cause beyond that which justifies the arrest of the person (id.).
The connection between the crime and the search is significant in the Belton context because the nature of the crime and the circumstances surrounding the arrest are what provide (or fail to provide) probable cause for the search. But there is no inflexible requirement that the search concern only items relating to crimes for which the defendant is formally arrested. In People v Ellis (62 NY2d 393, supra), for example, where the defendant was arrested for a traffic infraction but the circumstances gave the arresting officers probable cause to believe that the car contained a gun, we sustained the search of the car, noting that "it is irrelevant that *681 defendant was arrested for a traffic infraction. It was the probable cause to believe a gun was in the car that gave the police officers grounds for the search of the car” (id., at 397).
Thus, the proper inquiry in assessing the propriety of a Belton search is simply whether the circumstances gave the officer probable cause to search the vehicle. Whether the officer had probable cause to arrest an occupant of the vehicle for one or more crimes is significant. Which of those crimes the officer selected when formally notifying the suspect that he was under arrest has little bearing on the matter.
Here, for example, according to the hearing court’s findings, Officer King had probable cause to arrest defendant for possession of burglar’s tools and, given that and the surrounding circumstances, probable cause to believe that the car would contain further evidence relating to that crime. He could have placed defendant under arrest for possession of burglar’s tools at that point; in fact, Officer King’s testimony and the hearing court’s findings suggest that functionally, if not formally, defendant was arrested when he was taken from the gas station to the police station. There was, at that moment, a sufficient predicate for a search of the car, including the gym bag. The evidentiary basis for the search was in no way eroded by Officer King’s decision, when he later placed defendant formally under arrest, to charge defendant with criminal impersonation rather than possession of burglar’s tools.
Finally, that the search of the car was conducted after defendant was taken to the Port Authority Police Station and the vehicle was impounded does not compel a different result. The justifications for a warrantless search conducted upon probable cause pursuant to the automobile exception do not dissipate merely because the vehicle has been placed in the control of the police (People v Milerson, 51 NY2d 919, 921) and the exception is equally applicable whether the search is conducted at the time and place where the automobile was stopped or whether, instead, the vehicle is impounded and searched after removal to the police station (People v Orlando, 56 NY2d 441, 446). Here, where the search was reasonably close in time and place to the point of arrest, we conclude that there was no requirement that the police further delay the search to obtain a warrant (People v Milerson, supra, at 921).
III.
For these reasons, we conclude that defendant’s motion to *682 suppress the fruits of the search was properly denied. Defendant’s remaining contention, concerning alleged error in the admission of evidence of uncharged crimes at trial, is without merit in light of the fact that the trial court sustained defendant’s objection and gave a curative instruction (see, People v Santiago, 52 NY2d 865).
Accordingly, the order of the Appellate Division should be affirmed.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed.

. Both courts also held in the alternative that the search was justified as an inventory search, citing People v Gonzalez (62 NY2d 386). Our conclusion that the search was permissible under People v Belton (55 NY2d 49) makes it unnecessary for us to address defendant’s contentions that the People’s proof at the suppression hearing was insufficient to establish that the search was conducted pursuant to standard police procedures authorizing the inventory search of impounded vehicles.

. References to the "Belton rule” or a "Belton search” are to our Belton II decision (55 NY2d 49), which followed the United States Supreme Court’s reversal of our decision in Belton I (50 NY2d 447).