■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK TOWNSEND, Appellant.—Judgment of the Supreme Court, New York County (James J. Leff, J., at hearing; Ira Beal, J., at trial and sentence), rendered March 1, 1988, convicting appellant, after a jury trial, of criminal possession of a controlled substance in the second degree (Penal Law § 220.18), and sentencing him to an indeterminate term of six years' to life imprisonment, reversed, on the law, the facts and as a matter of discretion in the interest of justice, and the indictment dismissed.

At approximately 7:00 A.M. on Friday, April 27, 1984, appellant's 1982 Datsun, which was illegally parked on 10th Avenue, was towed to a Department of Transportation pound. On the morning of April 28, 1984, appellant appeared at the pound, located on Pier 76, to reclaim the vehicle. At that time, appellant was informed that because there were unpaid tickets in the amount of $2,725, his Datsun had been declared a "scofflaw" car. Appellant was further advised that upon paying the outstanding fines, the "scofflaw" restraining order would be lifted and he would be permitted to take possession of the vehicle.

That very same day, appellant duly paid the $2,725 in full satisfaction of the outstanding tickets, and again attempted to claim his car. Once again, his efforts were for naught; this time he was told that because his registration had expired, he was required to obtain a valid registration before he could regain possession of the car.

Appellant's second visit to the pound that day alerted the pound staff that his Datsun was no longer under a "scofflaw" restraining order. Moreover, also on April 28th, the Department of Transportation Parking Violations Bureau conveyed a document to the Bureau of Traffic Operations, removing the restraining order and informing Traffic Operations that appellant had, in fact, paid the full $2,725 in satisfaction of the outstanding fines. It is therefore indisputable that the pound was on notice that appellant's Datsun was no longer under "scofflaw" status.

On April 30, 1984, one Officer Voltaggio, of the Auto Investigation Unit, went to Pier 76 "to look at the cars that are left over from the pier." Among his duties were matching license plates and serial numbers, entering and inventorying the contents of those cars with property in plain view, and enter-

ing and inventorying all cars which were designated "scofflaws", "whether we see property or not." Voltaggio had "vouchers" with all relevant documents pertaining to each vehicle attached.

Voltaggio acknowledged that on April 30th he had in his possession, among other documents attached to the voucher regarding appellant's car, a copy of the April 28th letter to the Bureau of Traffic Operations, which lifted the restraining order and removed the "scofflaw" status of appellant's car. Also attached to Voltaggio's voucher was a copy of the paid receipt. He therefore had actual written notice that appellant's Datsun was not a "scofflaw" vehicle on April 30th. In fact, Voltaggio testified that he had reviewed the documents pertaining to appellant's car.

Voltaggio acknowledged that he did not observe any property in plain view when he went to check appellant's car. However, despite the fact that he did not see any property when looking from the outside of the vehicle, and although the car was no longer a "scofflaw" car, Voltaggio opened the driver's door, using a "slim jim", and entered the vehicle. Only *after* he was inside the car did he notice an airline bag on the passenger's side floor. Indeed, on cross-examination, Voltaggio reaffirmed that he never saw the bag before he entered the car. Thus, by entering the car, Voltaggio deviated from the procedures he had described. Later, in an apparent attempt to legitimize his actions, he contended that the reason he opened the door was to confirm the VIN number of the car. However, Voltaggio's own testimony refutes this, since he testified that not all cars were opened.

Voltaggio testified that "the bag was *opened* [as opposed to *open]* and I looked into the bag and saw a balance scale." Voltaggio then removed the bag from the car, put it on the hood and examined its contents. Inside the bag, he found a closed cookie tin, which he opened and found to contain two clear envelopes full of white powder, later determined to be 3¼ ounces of cocaine.

Voltaggio called Manhattan South Narcotics; shortly thereafter one Officer Annunziata arrived. At 4:45 P.M., when appellant appeared in yet another attempt to recover his car, Annunziata arrested him. A search of appellant yielded several thousand dollars and a small amount of cocaine; a search of the trunk of his car yielded a "millstile".

The hearing court ruled that the search of appellant's car was a proper inventory search which was not conducted in

violation of his Fourth Amendment rights. The court further ruled that certain statements appellant made subsequent to his arrest were admissible, as were numerous out-of-court identifications of him made by employees of the Department of Transportation. Appellant was subsequently tried and convicted of criminal possession of a controlled substance in the second degree; however, he was acquitted of criminal possession of drug paraphernalia and a related charge alleging bribery.

Appellant contends on appeal that the drugs found in the cookie tin, which was, in turn, inside the airline bag, were inadmissible because the inventory search of his car was illegal. We agree and hold that the hearing court erred in denying appellant's motion to suppress.

While it is well-settled law that the police may search an impounded vehicle to inventory its contents *(South Dakota v Opperman,* 428 US 364; *People v Gonzalez,* 62 NY2d 386, 388-389), such a search must be "reasonable" to pass constitutional muster. *(Illinois v Lafayette,* 462 US 640, 643-644.) Furthermore, the inventory may only be pursuant to standardized procedures, since officers are not vested with discretion to determine the scope of such a search. *(Colorado v Bertine,* 479 US 367, 376, 107 S Ct 738, 744 [Blackmun, J., concurring].) Regarding inventory searches of impounded cars, the Supreme Court has stated: "These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody * * * the protection of the police against claims or disputes over lost or stolen property * * * and the protection of the police from potential danger * * *. The practice has been viewed as essential to respond to incidents of theft or vandalism." *(South Dakota v Opperman,* 428 US, *supra,* at 369.)

It is clear that the search herein cannot be justified simply because appellant's illegally parked car was towed. *(People v Blasich,* 140 AD2d 361, *affd* 73 NY2d 673 ["the failure to pay the parking fee was not a mere traffic violation which would have limited the officer's subsequent rights to search the vehicle"; search upheld where incident to arrest following defendant's theft of services and officer observing "slim jim" in plain view].) Voltaggio admitted that he deviated from the proper procedures to which he himself testified. First, while he asserted that an inventory of visible property in every vehicle which had been in the pound overnight was routinely conducted, he acknowledged, more than once, that he never saw the airline bag until *after* he entered the car. Thus, respon-

dent's argument that "defendant's car fit the profile of a car whose visible property would be inventoried" is meritless, since the question is whether the property was visible while the officer was engaging in lawful police activity. *(People v Gonzalez,* 62 NY2d, *supra,* at 388, 391 [where defendant had been arrested for driving with a suspended license, police officer who was following squad car and driving defendant's car to station noticed a brown bag suspended on a wire under dashboard; Court of Appeals held that "(g)iven the unusual location of the bag, the manner in which it was affixed to the car and the apparent effort to conceal it under the dashboard * * * the police might reasonably conclude that the bag contained items requiring discovery and inventory"].)

Second, while Voltaggio testified that he would routinely conduct an inventory of all "scofflaw" cars, on April 28th, two days prior to Voltaggio's search, the "scofflaw" status had been removed from appellant's Datsun. Indeed, Voltaggio had two documents to that effect—the paid receipt and the release of the restraining order, both dated April 28th—attached to the voucher relating to appellant's car. Thus, the search was not pursuant to routine procedures as testified to by Voltaggio, who clearly stated that non-"scofflaw" cars were not automatically subject to inventory searches.

We conclude that Voltaggio's search was neither pursuant to procedures authorized by the Department of Transportation nor was it an inventory of property in plain view and was, therefore, a pretext search conducted without any lawful predicate and wholly improper. Thus, the cocaine discovered in the airline bag must be suppressed. In turn, the cocaine subsequently seized, as well as appellant's statements and identification following his unlawful arrest, must also be suppressed as fruit of the poisonous tree. *(Wong Sun v United States,* 371 US 471, 486-487.)

Accordingly, we reverse the conviction appealed from, grant the motion to suppress, and dismiss the indictment. Concur—Carro, Ellerin and Rubin, JJ. Kupferman, J. P., and Smith, J., each dissent in separate memoranda as follows:

Kupferman, J. P. (dissenting).

In denying suppression, the hearing court stated: "With respect to the issue of the admissibility, first, of the airline bag, with respect to the admissibility of the contents of that bag, specifically, a scale, a cookie tin and other objects, I find that the procedure followed regarding the taking of the vehicle to the police pound at Pier 76 was a routine procedure

followed by the Department of Transportation, not in furtherance of any criminal investigation. That the custodial searches were a part of the procedure followed through the Parking Violations Bureau and the Department of Transportation."

In view of the fact that the automobile in question was, in any event, being held because of an expired registration, it was properly under the jurisdiction of the Department of Transportation. The payment of the "scofflaw" amount was not the only reason for detaining the automobile. It was there from the morning of Friday, April 27th until April 30th. The officer acted in accordance with the standardized procedure. There was an appropriate nexus. *(Cf., People v Blasich,* 73 NY2d 673.)

Smith, J. (dissenting).

I would affirm the finding of the hearing court that the police conducted a proper inventory search and discovered narcotics during that search. *(South Dakota v Opperman,* 428 US 364 [1976]; *Illinois v Lafayette,* 462 US 640 [1983]; *People v Gonzalez,* 62 NY2d 386 [1984].)

The facts, taken in the light most favorable to the People, indicate that on April 27, 1984 the defendant's car was towed to a Department of Transportation pound after it was illegally parked on 10th Avenue in New York County. Because there were $2,725 in unpaid tickets, the car was declared a scofflaw car. After defendant paid the tickets, he was informed that he could not get the car because the registration had expired.

On April 30, 1984, three days after the car was towed, a police officer whose duties included reading VIN (vehicle identification number) numbers and inventorying cars entered the car to read its VIN number. While in the car, he saw an airline bag on the floor and noticed a scale inside. Further investigation revealed narcotics.

In *People v Gonzalez (supra,* at 388), the issue was "whether the police lawfully searched a closed container found in defendant's car, without a warrant, as part of an inventory search." The *Gonzalez* court concluded that the inventory search was proper.

Since there is no doubt that the police had a right to make an inventory search, the majority's conclusion that the search was a pretext and therefore unreasonable is not supported by the evidence.