■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KARIM PARKER, Appellant. [859 NYS2d 408]—

Judgment, Supreme Court, New York County (William A. Wetzel, J., at hearing; Arlene D. Goldberg, J., at plea and sentence), rendered April 24, 2006 convicting defendant of robbery in the first degree, and sentencing him to a term of seven years, unanimously affirmed.

The court properly denied defendant's suppression motion. The police observed three men in a car engaging in a pattern of "casing"-type and otherwise suspicious behavior as well as traffic violations, but did not initially stop the car and lost sight of it. Immediately thereafter, they heard radio broadcasts describing a gunpoint robbery committed by three men occupying a car bearing some similarities to the car they had been observing. When the officers encountered the same car they had seen before, given the close spatial and temporal factors, the police had, at the very least, reasonable suspicion that the occupants were involved in criminal activity, sufficient to justify an ordinary, nonforcible automobile stop. The record establishes that as the officers approached the car, and prior to any seizure going beyond a vehicular stop, they noticed that two of the three occupants met specific descriptions that matched two of the three robbery suspects (especially with regard to one suspect's tattoos). At this point, the police clearly had probable cause to arrest the occupants (*see People v Garcia*, 24 AD3d 308, 309 [2005], *lv denied* 6 NY3d 833 [2006]). In any event, even assuming for the sake of argument that the police forcibly removed the occupants at gunpoint *before* noticing that two of them fit the descriptions, the totality of circumstances at least provided reasonable suspicion justifying such action (*see People v Hicks*, 68 NY2d 234, 238 [1986]), and such suspicion ripened into probable cause as soon as the police noticed the resemblance of the men to the described robbery suspects.

After the police removed the occupants, they noticed a pistol in the car. Even assuming that this was not an open-view observation, it was justified under the automobile exception (*see People v Blasich*, 73 NY2d 673 [1989]), because there was probable cause to believe the occupants had just committed a robbery involving a firearm. Even if, prior to the discovery of the

pistol, the police still had no more than reasonable suspicion, a limited check of the car for weapons was still permissible since the circumstances posed a threat to the officers' safety (*see People v Mundo*, 99 NY2d 55 [2002]), and the presence of the weapon was an additional basis for the lawful arrest of the occupants. Finally, even if at the time the robbery victims arrived to identify the suspects, the police still had only reasonable suspicion, the investigatory detention was still lawful, notwithstanding the handcuffing of the suspects (*see People v Allen*, 73 NY2d 378 [1989]). Thus, under any of the scenarios posited above, there was no Fourth Amendment violation, and no basis upon which to suppress any evidence as fruit of an unlawful seizure.

The showup identification of defendant, approximately 30 minutes after the crime, was not unduly suggestive. Both the use of a showup and the manner in which it was conducted were justified by the exigencies of the case and the interest of prompt identification (*see People v Duuvon*, 77 NY2d 541 [1991]; *People v Love*, 57 NY2d 1023, 1024 [1982]). While defendant cites a series of allegedly suggestive circumstances surrounding the showup, the overall effect was not significantly greater than what is inherent in any showup (*see People v Gatling*, 38 AD3d 239, 240 [2007], *lv denied* 9 NY3d 865 [2007]). Defendant offers no support for his assertion that the police "could have conducted a prompt lineup," or any estimate of the delay that would have resulted from efforts to locate three sets of suitable fillers. Concur—Tom, J.P., Mazzarelli, Andrias and Williams, JJ.