OPINION OF THE COURT
Scott A. Miller, J.
The defendant, Raphael Brukner, is charged with violating a one-year conditional discharge (CPL 410.70) to which he was sentenced on June 16, 2014, after entering a plea of guilty to disorderly conduct (Penal Law § 240.20 [1]). The alleged conditional discharge violation is based upon an incident which occurred on July 21, 2014 at 11:45 p.m. on the grounds of the First Baptist Church, 309 North Cayuga Street, in the City of *356 Ithaca, which resulted in the filing of three new Penal Law charges against the defendant: resisting arrest (Penal Law § 205.30), a class A misdemeanor, obstructing governmental administration in the second degree (Penal Law § 195.05), a class A misdemeanor, and unlawful possession of marihuana (Penal Law § 221.05), a violation. By decision dated July 2, 2015, this court granted defendant’s combined motions for dismissal of all charges and dismissal of the violation of conditional discharge petition. The People subsequently moved for reargument pursuant to CPLR 2221 (d) (2) asserting that the court overlooked a “matter of law.” The court granted the People’s motion for reargument and on August 31, 2015 the court vacated its previous July 2, 2015 decision and requested that both the People and defendant file supplemental briefs.
Procedural History
On February 18, 2015, this court held a hearing on the violation of the conditional discharge. The People were represented by Brad Rudin, ADA, and the defendant was represented by attorney Max R. Brown. The parties stipulated, and the court approved, at the conclusion of the hearing, that all of the evidence presented would be considered on two questions: (1) whether defendant violated the terms and conditions of the one-year conditional discharge sentence imposed on June 16, 2014, and (2) whether defendant is entitled to suppression and dismissal of the July 21, 2014 charges based upon defendant’s allegation that his initial detention was unreasonable. After evaluation of the evidence, review of the arguments, including all arguments and authority submitted by the defendant and People with respect to the pending motion for reargument, the court finds and concludes as follows:
Factual Findings
Ithaca Police Department Officer Richard Niemi and Officer Kevin Slattery testified for the People. Niemi and his partner, Slattery, were on uniformed bicycle patrol on the night of July 21, 2014 near DeWitt Park, a public city park. The Officers were proceeding through DeWitt Park from Cayuga Street, heading east to Tioga Street. Officer Slattery explained that police routinely check city parks after 10:00 p.m. to make sure no one is trespassing. A portion of the First Baptist Church and its grounds are also located at the northeast corner of DeWitt Park. Officer Slattery testified that, at about 11:45 p.m., he noticed a group of four individuals on the Church grounds *357 which overlap the park, and he approached to inquire whether they had permission from the Church to be on its property. According to Officer Slattery, earlier that week, he and Lieutenant Scott Garin had interacted with Mark Smith at Dewitt Park, and Officer Slattery recognized Smith as one of the four individuals on this July 21st evening. Officer Slattery testified that when he had previously encountered Smith, Lt. Garin had taken his name and confirmed with the First Baptist Church that Smith did indeed have permission to sleep on its property. Officer Slattery recalled that Lt. Garin had told him that only Smith had the Church’s permission. Officer Slattery testified that he called Lt. Garin on the night of July 21st and Lt. Garin instructed him to obtain the IDs of the other three individuals who appeared to be staying on the Church’s grounds as well. As the two Officers approached, two of the four people walked away, leaving only Smith and defendant Raphael Brukner. At no time did the Officers observe the smoking of marihuana or what appeared to be the burning ends of tobacco cigarettes or marihuana cigarettes. No smoke was ever observed.
Officers Niemi and Slattery both testified that they had detected the smell of burnt marihuana from 20-30 feet away. Niemi and Slattery both noticed the strong smell of burnt marihuana and both observed that the odor became stronger as they approached the group. Niemi and Slattery both confirmed the odor was “very strong” and that it emanated from defendant Brukner. According to Officer Niemi, when he and Officer Slattery were initially speaking with defendant Brukner, the defendant was using his feet to push a sweatshirt over a “tin can,” which was clearly under the defendant’s dominion and control. Both Officers credibly testified that they possessed the training and experience to detect the odor of marihuana. Officer Slattery testified that he asked if anyone had permission to be there, and Brukner answered that he had permission from the pastor. Slattery asked for the pastor’s name, and according to Slattery, Brukner became defensive and said that the pastor’s name was “inconsequential.” At this point, Officer Slattery determined that the encounter had turned “adversarial.” Additionally, Slattery stated that a week earlier during an encounter with the defendant, he had volunteered that he “liked to fight police.” Officer Niemi requested his ID, and Brukner said to Niemi, “You can look at it but don’t touch it.” Officer Niemi told Brukner he’d give it back, but that he needed to handle it. Brukner soon acceded to *358 the request and handed over his ID to Officer Niemi, at which point, Niemi ran his data for arrest warrants and found that the defendant had none outstanding.
Officer Slattery testified that he had observed Brukner secrete what appeared to be a cell phone under a nearby drain pipe and when asked about it, Brukner very angrily replied, “Don’t touch my cell phone.” Based upon on the strong smell of burnt marihuana coming from defendant Brukner, Officer Slattery told the defendant that he needed to turn around and face the wall and put his hands behind his back. Officer Slattery cited three reasons for this detention of defendant Brukner: (1) a check for weapons, (2) for officer safety—because of defendant’s adversarial behavior, and (3) to search for marihuana. Defendant Brukner refused to comply with the Officer’s directive. Officers Niemi and Slattery pinned defendant against the wall, and Officer Slattery told defendant, “Look this is going to happen.” Defendant was repeatedly told to stop resisting. Officer Slattery testified that Brukner yelled, his “eyes got very large,” his “nostrils flared, his jaw clenched, and he stepped into defensive posture” and he said, “Don’t touch me!” Officer Niemi testified that Brukner “tensed up,” and would not stop “resisting.” Defendant refused to put his hands behind his back, and he tried to pull away. Officer Niemi testified that he and Officer Slattery repeatedly told defendant to stop “resisting,” as he was being searched for marihuana. Officer Slattery testified that he and Officer Niemi told defendant they’d rather have him comply and not resist. Defendant Brukner continued to clench his arms and would not allow the Officers to search him. Brukner continued to resist and the Officers had to take him to the ground, whereupon defendant continued to roll. At one point while all three were on the ground, defendant grabbed Officer Slattery’s right ring finger and bent it so hard that Officer Slattery thought it might break. Officer Slattery then issued three knee strikes to Brukner’s back at which point defendant released his grip and put his hands behind his back and was immediately handcuffed.
Officer Niemi testified that as the events unfolded, there was no time to inform Brukner that he was under arrest prior to the handcuffing. After defendant was handcuffed, according to Niemi, a search revealed a “bubbler” type pipe on his person, and nearby, where defendant had earlier been standing, a metal tin was discovered in which was located a small amount of marihuana. However, Officer Slattery testified that the tin *359 can containing marihuana was found not where defendant had been standing but was located with the cell phone that defendant had been observed secreting under the drain pipe. No weapons were discovered. Defendant Brukner was subsequently charged with obstructing governmental administration in the second degree (Penal Law § 195.05) based upon his physical resistance to a pat down for weapons and search for marihuana, resisting arrest (Penal Law § 205.30) based upon defendant’s failure to comply with commands to stop resisting, and also unlawful possession of marihuana (Penal Law § 221.05).
Conclusions of Law
The People’s Burden of Proof at a Violation of Conditional Discharge Hearing and the Collateral Estoppel Effect of Suppression
CPL 410.70, “Hearing on violation” (of conditional discharge), mandates that the People prove by “a preponderance of the evidence” that the defendant has violated a condition of his conditional discharge sentence (CPL 410.70 [3]). One of the conditions of defendant’s one-year conditional discharge sentence imposed for his June 16, 2014 disorderly conduct conviction was that he not be charged with any new offenses during the one-year period. Therefore, the People, at the hearing, were required to prove that defendant Brukner more probably than not committed one or more of the charged offenses, i.e., resisting arrest (Penal Law § 205.30), obstruction of governmental administration in the second degree (Penal Law § 195.05), or unlawful possession of marihuana (Penal Law § 221.05). However, before the court reaches the issue of whether the People satisfied their burden of proving that defendant Brukner likely committed one or more of the charged offenses, the court must first address defendant’s motion to suppress. A suppression ruling favorable to a defendant in a criminal case serves as collateral estoppel for a violation of conditional discharge. (See People ex rel. Dowdy v Smith, 48 NY2d 477 [1979].)
Standing of Defendant to Challenge Search
Defendant has moved to suppress all evidence obtained by the Officers after defendant Brukner was instructed to turn and face the wall and submit to a pat-down frisk and search. In short, defendant argues that the Officers were not authorized to detain and search him, and that all evidence obtained as a *360 result of the claimed unauthorized detention must be suppressed as “fruit of the poisonous tree” and all charges consequently must be dismissed. (Wong Sun v United States, 371 US 471 [1963].) The People argue that, based upon the Officers’ training and experience, the odor of marihuana emanating from defendant Brukner and his aggressive verbal responses led the Officers to reasonably believe that defendant posed a safety risk, and thus, they possessed both “reasonable suspicion for a forcible stop” and “probable cause to arrest.” (People’s answer at 5.)
The court must first address, as a threshold matter, the question of whether defendant Brukner possesses standing to challenge his detention and the seizure of evidence. Certainly defendant has standing to object to the alleged unlawful detention of his person, from which flowed the charges of resisting arrest and obstructing governmental administration in the second degree. However, the People assert that defendant has no standing to object to the seizure of the marihuana discovered in the tin can. The court rejects the People’s claim. The hearing testimony revealed that defendant Brukner exercised dominion and control over the seized tin can which was subsequently found to contain marihuana. Officer Niemi testified that defendant Brukner was attempting to cover the tin container with a sweatshirt using his feet, and Officer Slattery stated he observed defendant attempt to hide the tin container with his cell phone under a drain pipe. Both Officers’ versions are entirely consistent with an individual exercising dominion and control over private property. Both accounts also demonstrate that defendant had an expectation of privacy in this item.
It is true that at a suppression hearing, a defendant has the burden of establishing standing by demonstrating “a personal legitimate expectation of privacy.” (People v Wesley, 73 NY2d 351, 357 [1989].) However, at a suppression hearing, a defendant is not required to testify or affirmatively offer evidence in order to sustain the burden of establishing standing. “[Standing may be supported with evidence educed from the People’s case.” (People v Whitfield, 81 NY2d 904, 906 [1993].) The evidence offered by the People during its direct case clearly satisfied the defendant’s burden of establishing that he had a legitimate expectation of privacy in the tin container that he was observed attempting to conceal.
*361 Whether the Police May Detain and Search a Pedestrian without a Warrant Merely Based upon the Strong Odor of Marihuana Emanating from That Individual
Surprisingly, this court has not come across any previous written New York judicial opinion which addresses the precise question presented here, that question being, whether the police may detain and search a pedestrian merely based upon the strong odor of marihuana emanating from that individual. As this question is likely to arise again, not only in this jurisdiction,[1] but throughout the state, a thorough analysis is warranted.
The People have the burden of going forward to establish the legality of the police conduct in the first instance (see People v Whitehurst, 25 NY2d 389, 391 [1969]). The burden then shifts to the defendant to prove the unlawfulness of the police intrusion.
Penal Law § 221.10, criminal possession of marihuana in the fifth degree, provides:
“A person is guilty of criminal possession of marihuana in the fifth degree when he knowingly and unlawfully possesses:
“1. marihuana in a public place, as defined in section 240.00 of this chapter, and such marihuana is burning or open to public view, or
“2. one or more preparations, compounds, mixtures or substances containing marihuana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than twenty-five grams.
“Criminal possession of marihuana in the fifth degree is a class B misdemeanor” (emphasis added).
Thus, the lowest level marihuana crime in New York requires that the defendant either smoke marihuana in public, or possess more than 25 grams.
In Matter of Tonay C. (119 AD3d 560 [2d Dept 2014]), the Second Department affirmed a conviction for Penal Law § 221.10 and agreed with the trial court’s denial of suppression finding that the arresting officer possessed probable cause because he actually “observed the [defendant] smoking marijuana in public.” (Matter of Tonay C. at 561; see Matter of Camille H., 215 AD2d 143 [1st Dept 1995] [officer testified that *362 he actually observed the defendant smoking a “cigar-shaped blunt” and thus he possessed probable cause to arrest the defendant for Penal Law § 221.10]; see also People v Robinson, 265 AD2d 812 [4th Dept 1999] [officers had probable cause to arrest defendant for criminal possession of marihuana in the fifth degree where defendant had his hand near his mouth and then threw a blunt to the ground and stepped on it; and when the officers reached the spot where the object had been discarded, they detected the odor of burning marihuana and observed a cigar containing marihuana]; see also People v Schobert, 93 AD2d 949 [3d Dept 1983] [police possessed probable cause to arrest defendant for the crime of burning marihuana in public (Penal Law § 221.10) where police smelled marihuana coming from direction of defendant and two companions who were in a public parking lot, and also observed the three light a pipe, and observed defendant appear to smoke it].)
The People, relying upon People v Jenkins, argue that exigent circumstances existed in the case before this court because the “urgent events ma[de] it impossible to obtain a warrant in sufficient time to preserve evidence or contraband threatened with removal or destruction.” (People v Jenkins, 24 NY3d 62, 65 [2014], quoting People v Knapp, 52 NY2d 689 [1981].) However, this very authority makes it clear that in order for the police to search without a warrant under the “exigent circumstances” exception, law enforcement must still first “possess probable cause to search.” (Jenkins at 64.) Here, the police did not possess probable cause to search defendant Raphael Brukner. To make the matter even clearer, suppose the police officers had merely requested that the defendant remain at the park while law enforcement obtained a search warrant for his person and belongings? Would a neutral magistrate have issued a search warrant under these circumstances where law enforcement merely smelled marihuana? This court would not have issued a search warrant. And the court further finds it unlikely that any neutral magistrate could find, if being intellectually honest, that probable cause of a crime was present under these circumstances.
The Court of Appeals has established a graduated four-level test for evaluating the reasonableness and constitutionality of police-citizen encounters. (People v Moore, 6 NY3d 496, 498-499 [2006]; People v Hollman, 79 NY2d 181, 184-185 [1992].) The first level permits a police officer to request information *363 from an individual, and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality. (People v Moore, 6 NY3d at 498; People v De Bour, 40 NY2d 210, 223 [1976].) The second level, known as the common-law right of inquiry, requires a founded suspicion that criminal activity is afoot, and permits a somewhat greater intrusion short of a forcible seizure. (Moore at 498-499.) The level two common-law right to inquire permits law enforcement to inquire whether the suspect is engaged in criminal activity.
“Once the police officer’s questions become extended and accusatory and the officer’s inquiry focuses on the possible criminality of the person approached, this is not a simple request for information. Where the person approached from the content of the officer’s questions might reasonably believe that he or she is suspected of some wrongdoing, the officer is no longer merely asking for information. The encounter has become a common-law inquiry that must be supported by founded suspicion that criminality is afoot.” (Hollman at 191.)
A level two common-law inquiry however, does not authorize a more “intrusive step,” which would amount to even a brief detention of the individual. (People v Johnson, 54 NY2d 958, 960 [1981].) Citizens have the right to be left alone and where the police possess only the level two common-law right of inquiry, the citizen likewise has the right to ignore the officer and walk away. (Moore at 500.) The third level permits a police officer to forcibly stop and temporarily detain an individual, based upon a reasonable suspicion that the individual is committing, has committed, or is about to commit a crime. (Moore at 498-499; De Bour at 223.) The fourth level authorizes an arrest based on probable cause to believe that a person has committed a crime. (De Bour at 223; Moore at 499.)
The level three temporary detention of an individual is also codified by statute. Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing, or is about to commit a felony or misdemeanor, the Criminal Procedure Law authorizes a forcible stop and detention of that person. (CPL 140.50 [1]; see Terry v Ohio, 392 US 1 [1968].) The Court of Appeals has unambiguously stated that a level three detention is limited to crimes, i.e., only felonies and misdemeanors: “[L]evel three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable *364 suspicion that the particular individual was involved in a felony or misdemeanor” (Moore at 498-499 [emphasis added].) In Matter of Victor M. (9 NY3d 84 [2007]), the Court of Appeals once again explained that “[temporary detentions are authorized by statute only for felonies and misdemeanors, not violations (CPL 140.50 [1]).” (Id. at 88 [emphasis added].) Level three detentions simply do not apply to violations. Furthermore, even if a level three detention is permitted, this type of temporary detention justifies only a frisk, not a full-fledged search. (De Bour at 223.)
The People argue that the mere smell of marihuana emanating from a pedestrian, without more, is sufficient to justify both a level three forcible detention and search of a pedestrian as well as level four probable cause for arrest. The People ask this court to overturn its previous decision granting suppression based upon the court’s failure to consider and follow the Chestnut line of cases, infra, which, the People assert, stand for the proposition that police officers may forcibly stop, search and arrest a pedestrian merely based upon the odor of marihuana emanating from the person. This court finds that Chestnut and subsequent appellate authority do not support the People’s position. While this court did previously review the Chestnut line of cases before issuing its initial decision, the People are correct, in that the court did not previously discuss Chestnut and its progeny. However, since the question of whether the police may detain and search a pedestrian merely based upon the odor of marihuana will arise again, especially in this college town, law enforcement and civilians should be given clearer guidance on this issue.
Under the Fourth Amendment of the United States Constitution, a search conducted without a warrant is per se unreasonable unless one of the established exceptions[2] applies, and one such exception is the so-called “automobile exception” under which law enforcement may search a vehicle without a warrant when they possess both probable cause to arrest at least one of the occupants and probable cause to believe that evidence of a crime will be found. (People v Langen, 60 NY2d *365 170 [1983].) Elimination of the search warrant requirement in these cases has been justified both by the mobility of vehicles (i.e., the inherent risk that evidence or contraband will disappear if the search is delayed), and by the diminished expectation of privacy held by those who occupy motor vehicles.
In People v Chestnut (43 AD2d 260 [3d Dept 1974], affd 36 NY2d 971 [1975]), the Third Department held that during a lawful stop of a vehicle for a traffic violation, when police officers, “qualified by training and experience,” detect the “distinctive odor of marihuana smoke” emanating from the vehicle, the officers may search both the vehicle and its occupants without a search warrant due to the existence of both “probable cause” that the defendant has committed a crime and the “exigent circumstances” presented by the movable nature of the automobile which may contain contraband. (Id. at 261-262.) Chestnut has not yet grown stale and is still the law in New York. (See People v Acevedo, 118 AD3d 1103 [3d Dept 2014]; People v Rasul, 121 AD3d 1413 [3d Dept 2014]; People v Cuffie, 109 AD3d 1200 [4th Dept 2013]; People v Walker, 128 AD3d 1499 [4th Dept 2015] [holding that even the odor of “unburned marihuana” emanating from an automobile authorizes the warrantless search of the vehicle and its occupants]; cf. People v Kim, 29 Misc 3d 1218[A], 2010 NY Slip Op 51869[U] [Nassau Dist Ct 2010] [mere smell of marihuana alone did not justify search of defendant’s car].) Chestnut and progeny represent a narrow marihuana offshoot of the case law which falls under the broader scope of 4th Amendment jurisprudence known as the “automobile exception.”
In People v Galak (81 NY2d 463, 467-468 [1993]), a unanimous Court of Appeals discussed the evolution of the automobile exception to the warrant requirement, commonly referred to as a “Belton search,” infra, explaining,
“Although the search may proceed without a warrant, it must still be supported by probable cause ([California v Carney, 471 US 386,] 394-395; Carroll v United States, [267 US 132,] 154]). Inasmuch as the police had probable cause to search the truck, their doing so was permissible under the Fourth Amendment.
“When applying our State Constitution we have held that the police must not only have probable cause to search the vehicle but that there must also be a nexus between the arrest and the probable *366 cause to search (People v Blasich, 73 NY2d 673; People v Langen, 60 NY2d 170, 180-181, cert denied 465 US 1028; People v Belton, 55 NY2d 49; see, NY Const, art I, § 12). Though Langen characterized the nexus as a connection ‘between the probable cause to search and the crime for which the arrest is being made’ (60 NY2d, at 181), we made clear in Blasich [supra, 73 NY2d] that the requirement of a connection is flexible. Specifically, we declined to hold in Blasich that the inquiry was to focus solely on the crimes for which a defendant was formally arrested. Instead, we held ‘the proper inquiry in assessing the propriety of a Belton search is simply whether the circumstances gave the officer probable cause to search the vehicle’ (id., at 681; emphasis added).
“Thus, contrary to defendant’s assertions, a Belton search can be justified on grounds other than those that initially prompted police to stop the vehicle.”
This court rejects the People’s argument that the Chestnut/ Belton line of cases applies to an individual standing in a public park. While the Court of Appeals in Galak called for a “flexible” approach when analyzing warrantless automobile searches, this court will not contort the automobile exception to encompass pedestrians as well. The People ignore the fact that the Chestnut (and Belton) analyses apply only when two circumstances exist: (1) the police possess probable cause that defendant has committed a crime, and (2) defendant is also an occupant of an automobile, which creates the “exigent circumstance” that evidence could be destroyed or removed as a result of the delay in obtaining a search warrant. Here, neither of these two circumstances are present. Defendant is a homeless man who was merely standing in a public park. He was never alleged to be the occupant of a vehicle. The People’s analogy to cases involving defendants in automobiles stopped for traffic violations and from which the odor of marihuana is emanating do not apply. It is a crime, and a dangerous one, to drive while under the influence of marihuana. (Vehicle and Traffic Law § 1192 [4].) It is not a crime however, to smell, or even reek, of marihuana while standing in public. Unlawful possession of marihuana (Penal Law § 221.05) is a mere violation, not a crime.
It is worth noting that Chestnut was decided in 1974 when possession of any amount of marihuana was still a crime in *367 New York. Under New York’s “Marihuana Reform Act of 1977,” possession of less than 25 grams of marihuana was decriminalized and the offense was downgraded from a crime to a noncriminal violation carrying a maximum penalty of $100. (Penal Law § 221.05.)
“The purpose of the [Marihuana Reform Act of 1977] was to reduce the penalties for possession and sale of marihuana and in particular to ‘decriminalize’ the possession of a small amount of marihuana for personal use. That purpose was emphasized by the excision of the marihuana offenses from article 220. In the unconsolidated portion of the legislation, the Legislature expressed its findings and its purpose:
“The legislature finds that arrests, criminal prosecutions and criminal penalties are inappropriate for people who possess small quantities of marihuana for personal use.” (William C. Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Penal Law § 221.00 [emphasis added].)
Although under the automobile exception in New York the mere smell of marihuana still provides probable cause to arrest and search the occupant of a vehicle as well as probable cause to search the vehicle without a warrant, a sister state has abandoned this approach as a result of the recent decriminalization of marihuana in its jurisdiction. Prior to decriminalizing marihuana in January 2009,[3] Massachusetts courts followed New York’s automobile exception rule whereby the mere odor of marihuana could provide probable cause to arrest and search the occupant as well as search the vehicle without a warrant. However, after possession of less than one ounce of marihuana was decriminalized, that state’s highest court reexamined whether the automobile exception still applied when the police were confronted with only the mere odor of marihuana emanating from the vehicle and its occupants.
In Commonwealth v Cruz (459 Mass 459, 472, 945 NE2d 899, 910 [2011]), the Supreme Judicial Court of Massachusetts, *368 the highest court of the state, held that, in light of the 2009 law decriminalizing possession of one ounce or less of marihuana, “the odor of burnt marijuana alone cannot reasonably provide suspicion of criminal activity” (emphasis added). Three years later, in Commonwealth v Overmyer, infra, the same court addressed the issue of whether the strong smell of what in an officer’s expert opinion was a large amount of unburnt marihuana could serve as probable cause to arrest the individual and search the vehicle without a warrant. The Overmyer court, once again, held that because possession of less than an ounce of marihuana was no longer criminal, the mere odor of even unburnt marihuana could not provide probable cause for the arrest of the occupant and search of the vehicle. (469 Mass 16, 11 NE3d 1054 [2014].) The Overmyer court, when addressing whether a police officer’s expert opinion as to the amount of marihuana present based upon mere smell should be given legal weight, explained:
“Although the odor of unburnt, rather than burnt, marijuana could be more consistent with the presence of larger quantities, ... it does not follow that such an odor reliably predicts the presence of a criminal amount of the substance, that is, more than one ounce, as would be necessary to constitute probable cause. See Commonwealth v. Antobenedetto, 366 Mass. 51, 56 n. 2, 315 N.E.2d 530 (1974) (‘The foundation of probable cause must be specific data, the reliability of which could be judged by a magistrate’).
“The officers in this case detected what they described as a ‘strong’ or ‘very strong’ smell of unburnt marijuana. However, such characterizations of odors as strong or weak are inherently subjective; what one person believes to be a powerful scent may fail to register as potently for another. See Doty, Wudarski, Marshall, & Hastings, Marijuana Odor Perception: Studies Modeled from Probable Cause Cases, 28 Law & Hum. Behav. 223, 232 (2004).” (Overmyer, 469 Mass at 21, 11 NE3d at 1058-1059.)
This court does not follow Massachusetts law, but our sister state’s reasoning concerning whether the mere odor of burnt or unburnt marihuana, standing alone, could provide probable cause of a crime is at least instructive for this trial court, where New York courts have yet to specifically address this precise issue.
*369 Here, the mere odor of burnt marihuana coming from defendant Brukner was only enough to provide the officers with a founded suspicion that criminality was afoot (De Bour), permitting them a level two common-law right of inquiry. Therefore, the detention and search of defendant Brukner was not authorized under the circumstances observed. (Moore at 498-499.) There was no observation of the telltale glowing end of a burning blunt, a smoking pipe, or even the effervescent waft of a tiny cloud of smoke coming from the vicinity of the defendant and his companions.
An odor of stale or burnt marihuana on clothing, without more, is equally susceptible to the innocent non-criminal explanation that the defendant smoked marihuana previously in private, and not in public. Under settled De Bour jurisprudence, in order to elevate the level two common-law right of inquiry to the level three right to forcibly stop and detain, the police must obtain additional information or make additional observations of suspicious conduct sufficient to provide reasonable suspicion of criminal behavior. The Court of Appeals has “frequently rejected the notion that behavior which is susceptible of innocent as well as culpable interpretation, will constitute probable cause. It is equally true that innocuous behavior alone will not generate a founded or reasonable suspicion that a crime is at hand.” (De Bour, 40 NY2d at 216 [citations omitted]; see also Moore.)
The People’s reliance upon People v Lightfoot (124 AD3d 802 [2d Dept 2015]) is misplaced. In Lightfoot, the police were entitled to engage in a level three forcible stop and detention of the defendant who also smelled of marihuana because the police also possessed reasonable suspicion that the defendant had just committed a “crime,” not merely a violation. In Light-foot, the officer reasonably believed that the defendant had been trespassing in a dwelling (i.e., criminal trespass in the second degree, Penal Law § 140.15, a class A misdemeanor).
This court finds the Officers did not possess reasonable suspicion to justify the level three stop and frisk of the defendant. Even if the Officers had possessed the level three reasonable suspicion that defendant had committed a crime (i.e., criminal possession of marihuana in the fifth degree, Penal Law § 221.10), which would have permitted only a temporary detention of defendant, the full-blown search of defendant was not permitted. A level three temporary detention justifies only a pat-down frisk if there is reason to believe that the suspect is *370 armed and poses a threat to officer safety. It does not permit a full-fledged warrantless search for evidence. (De Bour at 223.) There is no evidence in the hearing record that either Officer observed anything which would have indicated defendant possessed a weapon. Prior to being ordered to turn around and face the wall in order to be searched, there was nothing threatening or unusual about defendant’s behavior and there certainly was nothing to suggest defendant was in possession of any weapon. Officers Niemi and Slattery made it clear that defendant wasn’t going to be just frisked, rather he was going to be “searched for marihuana.” While the Officers were permitted to ask defendant Brukner questions of an accusatory nature, the Officers were not authorized to order the defendant to turn and face the wall in order to be frisked and searched. This court cannot find precedent for and is unwilling to fashion what the People refer to as a “plain smell” exception to the search warrant requirement when officers possess nothing more than the odor of marihuana emanating from a pedestrian. The detention, frisk and search of defendant was not authorized. In short: the mere odor of marihuana emanating from a pedestrian, without more, does not create reasonable suspicion that a crime has occurred, and consequently does not authorize law enforcement to forcibly stop, frisk, or search the individual.
Since the stop, frisk and search of defendant were unauthorized, the charges of obstructing governmental administration in the second degree (Penal Law § 195.05) and resisting arrest (Penal Law § 205.30) cannot be sustained. A defendant cannot be convicted of obstructing an unauthorized action. (People v Vogel, 116 Misc 2d 332 [App Term, 2d Dept 1982], citing People v O’Connor, 257 NY 473 [1931].) Additionally, a defendant cannot be convicted of resisting arrest when the arrest is unauthorized. (People v Peacock, 68 NY2d 675 [1986].) The People’s assertion that, in bending the Officer’s finger, the defendant violated the “no-sock” law (Penal Law § 35.27) and that this conduct could serve as the basis for the arrest and subsequent seizure of the marihuana is without merit. Penal Law § 35.27 “concerns the defense of justification and does not create a new substantive crime . . . Thus, although the statute might preclude a justification defense to a charge of assault, it could not serve to transform the illegal arrest of defendant into a lawful one.” (People v Felton, 78 NY2d 1063, 1065 [1991] [citations omitted].) The record is clear that defendant’s conduct was immediate, spontaneous and occurred during the unau *371 thorized detention “and thus, was not sufficient to attenuate the unlawful stop so as to render the arrest and seizure of the contraband lawful.” (Id.) The charges of obstructing governmental administration in the second degree and resisting arrest are dismissed.
As the marihuana discovered is the fruit of the unauthorized detention, the physical evidence must be suppressed. (Wong Sun v United States, 371 US 471 [1963]; CPL 710.20.) Consequently, the charge of unlawful possession of marihuana (Penal Law § 221.05) is dismissed.
Court’s Granting of Suppression and Dismissal of All Charges Requires Dismissal of the Violation of Conditional Discharge Proceeding
As this court’s suppression and dismissal holdings above serve as collateral estoppel for the alleged violation of conditional discharge, that proceeding is also dismissed. (People ex rel. Dowdy v Smith.)

. The City of Ithaca is home to both Ithaca College and Cornell University.

. Some exceptions to the requirement for a search warrant include: consent (People v Gonzalez, 39 NY2d 122 [1976]); plain view (People v Brown, 96 NY2d 80 [2001]); search incident to arrest (People v Belton, 50 NY2d 447 [1980]); inventory search (People v Johnson, 1 NY3d 252 [2003]); exigent circumstances (People v McBride, 14 NY3d 440 [2010]); and the emergency doctrine (People v Molnar, 98 NY2d 328 [2002]).

. The “Massachusetts Sensible Marijuana Policy Initiative,” decriminalized the possession of less than one ounce of marihuana and made such offense punishable by a civil fine of $100. (Mass Gen Laws Ann ch 94C, § 32L [eff Dec. 4, 2008].) Twenty states and the District of Columbia have either decriminalized (i.e., civil fine only) or legalized possession of small amounts of marihuana and another 10 have legalized marihuana for medical use only. (See Wikipedia, Legality of Cannabis by U.S. Jurisdiction, en.wikipedia.org/ wiki/Legality_of_cannabis_by_U.S.jurisdiction#By_state.)