■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS VELASQUEZ, Appellant. [630 NYS2d 303] —Judgment, Supreme Court, New York County (Richard Carruthers, J., at *Mapp/Huntley* hearing; Thomas Galligan, J., at trial and sentence), rendered March 12, 1993, convicting defendant, after a jury trial, of criminal possession of a weapon in the third degree, and sentencing him to a term of $3^{1/2}$ to 7 years, unanimously affirmed.

On April 21, 1992, at about a quarter to two in the morning, plainclothes Police Officers Sullivan and DeMarco were in a parking lot on West 58th Street between 11th and 12th Avenues along with Officers Bellcastro, Donovan and Desantis next to two unmarked police cars, one of which was a taxicab. At that time in the early morning there was "no traffic whatsoever". Also, there were no pedestrians abroad and the area was "pretty much deserted".

The officers observed a male run by the lot "at a quick rate of speed" and about 10 or 15 feet behind they observed the defendant running after the first man. The defendant "had his right hand in his coat pocket with his left hand over the pocket like he was carrying something in there, running up the street". Both the first male and defendant looked over their shoulders "often". "They were running and looking around and looking".

The officers got into the cars and began following the two running men. When one of the unmarked cars passed the defendant to follow the first man, defendant stopped running and started walking. The second police car was the taxi and Officer Bellcastro stopped the taxi behind defendant. When Officer Sullivan, who was in the front passenger seat, opened the door of the cab defendant ran and climbed over a 10 to 12 foot high fence surrounding a parking lot. Bellcastro followed the defendant over the fence. Defendant went "behind a car at the end of the lot" but Bellcastro waited until his partner DeMarco climbed over the fence "because he had a flashlight". Defendant was lying face down behind the car with his hands

"tucked under his jacket". The officers who had their guns out at that point yelled to the defendant "for him to let us see his hands". When defendant did show his hands Bellcastro holstered his gun and picked defendant up and Officer DeMarco recovered a loaded and operable gun from the area where defendant had been lying. When searched at the stationhouse, crack vials were found on defendant's person.

Defendant asserts that the police did not have reasonable suspicion that a crime had been committed to justify pursuing and detaining him. However, it is "a well-settled principle: that a defendant's flight in response to an approach by the police, combined with other specific circumstances indicating that the suspect may be engaged in criminal activity, may give rise to reasonable suspicion, the necessary predicate for police pursuit" (*People v Sierra*, 83 NY2d 928, 929).

The Court of Appeals has pointed out that in evaluating police conduct, the court must consider whether or not the conduct was justified in its inception and reasonably related in scope to the circumstances which rendered its initiation permissible (*People v Cantor*, 36 NY2d 106, 111). Moreover, according to the four-tier approach set forth in *People v De Bour* (40 NY2d 210), while a simple request for information involving basic nonthreatening questions regarding, for example, identity, address or destination need be supported only by an objective credible reason not necessarily indicative of criminality (*supra*, at 223; *People v Hollman*, 79 NY2d 181, 185), the next step, a common-law inquiry, must be supported by a founded suspicion that criminal activity is afoot (*People v De Bour, supra*, at 223; *People v Hollman, supra*, at 185).

The police officers observed two men running in a deserted area with no traffic or other pedestrians shortly before 2:00 A.M. Both looked over their shoulders while running. The officers surmised either they were both running away from some criminal activity or defendant was chasing the lead runner, intent on harming him. Adding to the officers' suspicions, defendant held his right hand in his right waist pocket of his coat with his left hand on top of it. While any of these factors standing alone might be susceptible of an innocent interpretation, all of them together, under the circumstances, gave the police a founded suspicion that criminal activity was afoot (*People v Rodriguez*, 207 AD2d 669, *lv denied* 84 NY2d 939). The police were, therefore, justified in following defendant in the taxi in order to exercise the common-law right of inquiry. When defendant stopped running as the first car passed him following the lead runner, the officers' founded suspicion that

criminal activity was afoot was intensified. In any event, the police in the taxi following were justified in stopping to question defendant. The fact that defendant began running again when the taxi stopped and Officer Sullivan got out gave rise to a reasonable suspicion that defendant was committing or was about to commit a crime (*People v Sierra, supra,* at 930). Finally, the officers' pursuit of defendant over the fence into the closed lot was not only justified by reasonable suspicion of criminality but was supported by probable cause to believe defendant was committing the crime of trespass (*People v De Bour, supra,* at 223 ["a police officer may arrest and take into custody a person when he has probable cause to believe that person has committed a crime, or offense in his presence (CPL 140.10)"]). Once the officers saw the gun on the ground where defendant had been hiding, they had probable cause for possession of a weapon as well as trespass.

In addition, the court properly denied the motion to suppress the statement made by defendant after his arrest but before *Miranda* warnings were given since defendant's statement was spontaneous and not prompted by any police questioning. Defendant's subsequent statements were also admissible since the evidence clearly showed he was properly given his rights and understood them and the statements were voluntary. Concur—Sullivan, J. P., Wallach, Nardelli, Williams and Mazzarelli, JJ.