OPINION OF THE COURT
John C. Rowley, J.
The People, by Assistant District Attorney Brad Rudin, Esq., appeal from the December 31, 2015 decision of the Ithaca City Court (Miller, J.) which granted suppression of evidence and dismissed all pending charges against the defendant (51 Misc 3d 354 [2015]). The defendant (hereinafter respondent), by Max Brown, Esq., filed a brief in opposition on May 20, 2016. The People filed a notice of motion on May 24, 2016 seeking leave to file a reply memorandum, which is hereby granted.
Procedural History
On or about July 21, 2014 the respondent was arrested and charged with obstructing governmental administration in the second degree (misdemeanor), resisting arrest (misdemeanor) and unlawful possession of marihuana (violation) in violation of Penal Law §§ 195.05, 205.30 and 221.05 respectively. As a result of the arrest, respondent was also accused of violating the terms of a June 16, 2014 conditional discharge. The lower court conducted a combined violation and suppression hearing on March 18, 2015. By decision dated July 2, 2015, the lower court granted respondent’s motion to dismiss the charges. Upon the People’s motion to reargue, the lower court issued the December 31, 2015 decision which is the subject of this appeal.
Essential Facts
While on routine bicycle patrol, two police officers detected a strong odor of burnt marihuana emanating from the vicinity of the respondent’s location in DeWitt Park in the City of Ithaca. Respondent was with several other people as the officers approached, but two of them walked away, leaving just the respondent and another individual present. The officers determined that the odor was coming solely from the respondent. The officers further observed respondent moving his feet in an apparent effort to conceal a tin container on the ground with a sweat shirt. One of the officers also testified at the suppression hearing that he observed respondent put a cell phone beneath a drain pipe.
*196 The officers asked respondent for identification, which he initially refused to provide, then agreed to show it to the officer but not allow it to be taken. As Officer Niemi stated, “there was a lot of haggling” before respondent gave the identification to the officer. After doing a records check, the officers advised respondent they were going to conduct a search of his person and asked him to turn around, face the wall and put his hands behind his back to be handcuffed. Respondent refused to cooperate, which resulted in a physical takedown by both officers in an effort to handcuff him. In the ensuing struggle one officer employed three “knee strikes” to respondent’s back and respondent grabbed an officer’s finger and forcefully bent it in an effort to avoid being subdued.
Officer Slattery testified that they handcuffed respondent in order to “check for weapons . . . , for everyone’s safety . . . and . . . [to] check for marihuana.” Once respondent was effectively handcuffed and secured, a search of his person produced a marihuana pipe, and a search of the nearby area produced a cell phone and a tin containing a small amount of marihuana. Respondent was arrested and charged with the previously stated offenses.
Analysis
The central issue of this appeal is whether the police, having detected a strong odor of burnt marihuana emanating from the respondent, had a lawful basis to conduct a forcible stop and search.
The seminal case of People v De Bour (40 NY2d 210 [1976]) governs the lawfulness of police stops.
“The minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality. The next degree, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure [citations omitted]. Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person (CPL 140.50, *197 subd 1; see Terry v Ohio, 392 US 1; People v Cantor, supra). A corollary of the statutory right to temporarily detain for questioning is the authority to frisk if the officer reasonably suspects that he is in danger of physical injury by virtue of the detainee being armed (CPL 140.50, subd 3). Finally a police officer may arrest and take into custody a person when he has probable cause to believe that person has committed a crime, or offense in his presence (CPL 140.10). This synopsis represents the gradation of permissible police authority with respect to encounters with citizens in public places and directly correlates the degree of objectively credible belief with the permissible scope of interference.” (People v De Bour, 40 NY2d 210, 223 [1976].)
CPL 140.50, cited in De Bour, states in relevant part:
“1. ... [A] police officer may stop a person in a public place located within the geographical area of such officer’s employment when he reasonably suspects that such person is committing, has committed or is about to commit either (a) a felony or (b) a misdemeanor defined in the penal law, and may demand of him his name, address and an explanation of his conduct. . . .
“3. When upon stopping a person under circumstances prescribed in subdivision! ] one ... a police officer . . . reasonably suspects that he is in danger of physical injury, he may search such person for a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury and of a sort not ordinarily carried in public by law-abiding persons.”
The People contend that because neither De Bour nor CPL 140.50 (1) specifically mention noncriminal, violation level offenses, the law is unsettled as it applies to such situations. They also claim that because De Bour and most of its progeny did not involve violation level offenses, the courts never reached the issue. In addition, the People assert that the strong odor of burnt marihuana emanating from an individual provides police with a reasonable suspicion that the individual is in possession of marihuana at either the noncriminal (violation) level or the criminal level, justifying a forcible stop. These arguments are unpersuasive.
The People concede that CPL 140.50 (1) mirrors the requirements of a level three De Bour stop, and explicitly requires *198 that police have a reasonable suspicion of a felony or misdemeanor. Had the legislature intended to include violation level offenses, it most certainly would have done so, as it did in CPL 140.10 (1), which states:
“[A] police officer may arrest a person for:
“(a) Any offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence; and “(b) A crime when he or she has reasonable cause to believe that such person has committed such crime, whether in his or her presence or otherwise.”[1]
In People v Moore (6 NY3d 496 [2006]), the Court of Appeals reiterated the requirements necessary to justify a forcible stop and seizure:
“In De Bour, we set forth a graduated four-level test for evaluating street encounters initiated by the police: level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime (De Bour, 40 NY2d at 223).” (People v Moore, 6 NY3d 496, 498-499 [2006].)
There is no dispute regarding the applicability of levels one and two in the case at bar. The police were clearly permitted to approach and ask the respondent’s name and reason for being in the park after it was closed. The People disagree with the court below in whether the police were justified in moving to level three, the forcible stop and detention of respondent, which requires “a reasonable suspicion that the particular individual was involved in a felony or misdemeanor” (id.).
*199 The People make three arguments in support of their position: (1) level three stops are permitted based upon a strong odor of burnt marihuana, alone, even if the police are unable to determine what level offense may be involved; (2) level three stops are applicable to noncriminal offenses; and (3) the odor of burnt marihuana, together with alleged furtive behavior, permits a level three stop.
Odor of Marihuana
The People’s assertion that a level three stop is lawful when the police have reasonable suspicion of the commission of a noncriminal offense relies principally on People v Lightfoot (124 AD3d 802 [2d Dept 2015], lv denied 25 NY3d 990 [2015]). In its very brief opinion, the Second Department stated:
“The testimony adduced at the suppression hearing demonstrated that Police Officer Stephen Donohue observed the defendant exit an apartment building in a high crime area where the police received many complaints of drug sales and drug use. Donohue knew from previous interactions with the defendant that he did not live in the building, and was also aware that the owner of the building had signed a letter permitting police to enter the premises to arrest trespassers. When Donohue approached the defendant to ask him why he had been in the building, the defendant appeared ‘fidgety’ and Donohue noticed ‘a very strong odor of marijuana coming from him.’ Contrary to the defendant’s contention, Donohue had a ‘reasonable suspicion’ that the defendant had committed, was committing, or was about to commit a crime, authorizing him to forcibly stop and detain the defendant (People v De Bour, 40 NY2d 210, 223 [1976]; see People v Roque, 99 NY2d 50, 54 [2002]; People v Velasquez, 217 AD2d 510, 512 [1995]).” (People v Lightfoot, 124 AD3d at 802-803.)
The Court did not specify the precise crime upon which it relied; however, the Roque case it cited involved criminal trespass.
Here, the People claim Lightfoot stands for the proposition that the odor of marihuana provided the police with reasonable suspicion for the forcible stop. Because of its brevity, Lightfoot provides this court with little assistance. The expanded factual details in the People’s appellate brief, however, illuminate the *200 basis for the detention and arrest, namely: the police had reasonable suspicion the defendant had trespassed in the building, and had observed the defendant drop a bag of marihuana.[2] The odor of marihuana was not a significant factor in the stop or the arrest, according to the People’s argument.
The People also rely on People v Chestnut (43 AD2d 260 [3d Dept 1974]) and its progeny, in support of the premise that the odor of marihuana, alone, provides reasonable cause for a forcible stop and detention. As set forth by the court below, the law pertaining to warrantless automobile searches largely relies upon the exigency doctrine, not generally present in non-vehicular police encounters. Moreover, detection of the odor of marihuana emanating from an automobile, alone, provides law enforcement with reasonable suspicion that the driver was or is operating the automobile while under the influence of drugs in violation of Vehicle and Traffic Law § 1192 (4), a misdemeanor (Vehicle and Traffic Law § 1193 [1] [b] [i]). Thus, even were this line of cases applicable, they do not stand for the proposition that the odor of marihuana alone provides reasonable suspicion for a forcible stop and seizure of an individual. Odor, plus operation of a motor vehicle, provide reasonable *201 suspicion of the commission of a criminal offense, satisfying the level three requirements.
Noncriminal Violations
In People v Aponte (36 Misc 3d 1230[A], 2012 NY Slip Op 51556[U] [Sup Ct, Bronx County 2012]), an unreported case cited by the People, the motion court upheld a frisk of the defendant for a violation level offense. The officer, having dispersed an unruly crowd of people at an intersection, was confronted by the defendant who refused to disperse and questioned the officer’s authority. “[T]he police officer’s testimony, reciting events surrounding the frisk, convinces [sic] that the police officer had reasonable suspicion he might be in danger even though the underlying charge was a violation” (2012 NY Slip Op 51556[U], *5).
Contrary to the People’s argument, Aponte does not support a level three stop and search based upon reasonable suspicion of only a violation; it supports the right of the police to protect their safety even if the suspected offense is only a violation. “The Court emphatically rejects any claim that law enforcement’s right to search for safety reasons suddenly disappears when a violation is involved” (2012 NY Slip Op 51556[U], *5).
In the instant case, the officers neither observed any unlawful or criminal behavior, nor feared for their safety.
In a recent decision, the Third Department upheld County Court’s denial of suppression where an officer observed the defendant riding a bicycle on the sidewalk in violation of a city ordinance (first two offenses are violations, third is a misdemeanor). After defendant failed to stop as directed, the officer intercepted him with his patrol car. Defendant claimed he had a weapon and attempted to flee. The officer forcibly subdued him and seized the weapon. After searching defendant’s pockets, a quantity of cocaine was also discovered. The court stated: “Having witnessed the violation, the officer had a reasonable suspicion that defendant may have engaged in criminal activity and was, therefore, justified in directing him to stop for the purpose of conducting a limited investigation and determining the appropriate penalty.” (People v Morris, 138 AD3d 1239, 1240 [3d Dept, Apr. 14, 2016] [emphasis added].) Although the police officer did not know whether defendant had committed a violation or misdemeanor, observation of the defendant violating the ordinance on any level justified only a non-forcible stop. Defendant’s claim that he had a *202 weapon justified the forcible stop for the officer’s safety (id.; CPL 140.50 [3]).
Here, the officers engaged in the forcible stop and seizure before developing reasonable suspicion that respondent might have committed any offense, let alone a criminal offense. If only a limited investigatory stop was justified in Morris, nothing more intrusive can be justified here.
Odor Plus Allegedly Furtive Behavior
In People v Schobert (93 AD2d 949 [3d Dept 1983]), officers observed the defendant light an object and pass it among his companions, then detected the odor of marihuana as they approached. The Third Department said:
“Although perhaps not rising to the level of probable cause or reasonable suspicion, the fact an item was lighted and passed among defendant’s group supplied a sufficiently credible and objective basis on which to found a bare informational inquiry . . . In any event, once the officers detected the odor of marihuana, there was reasonable cause to believe a crime had been committed or was being committed in their presence . . . .” (People v Schobert, 93 AD2d 949, 950 [3d Dept 1983] [citations omitted].)
In Schobert, the police detection of the odor of marihuana provided confirmation that the object they saw being lit and passed around was, in fact, marihuana. Only then did the officers have reasonable suspicion that a misdemeanor criminal offense, smoking marihuana in a public place in violation of Penal Law § 221.10 (1),[3] was being committed. Neither the odor of marihuana, alone, nor the observation of a lit object being passed around, alone, were sufficient for the forcible stop.
Here, as in Schobert, the police made two observations (odor of burnt marihuana and attempt to conceal a tin), neither of which, alone, sufficed for a forcible stop. And unlike Schobert, the odor of burnt marihuana together with the alleged attempt to conceal a tin provided neither confirmation that any offense had been committed in the officers’ presence, nor reasonable suspicion that a criminal offense had been or was being committed. The combination of respondent’s behavior together with *203 the odor of burnt marihuana provided police with a basis for only “a bare informational inquiry” (id. at 950).
Conclusion
Neither the applicable statutes nor the well established case law support the People’s position that the evidence was lawfully obtained. The lower court, in its detailed opinion, properly found that the police lacked the requisite reasonable suspicion that a crime had been, was being or was about to be committed to justify forcibly handcuffing respondent and searching him for marihuana. Because the search was unlawful, the evidence stemming from it was properly suppressed and the charges dismissed.
Accordingly, the appeal is dismissed and the decision below is affirmed.

. Penal Law § 10.00 (1) defines offense broadly to encompass all levels of conduct punishable by a term of imprisonment or fine, including noncriminal violations. Penal Law § 10.00 (3) defines a violation as conduct punishable by up to 15 days’ incarceration.

. “Officer Mullin saw defendant run into 19 Lawrence Street, come back out and sit on the front steps (T. 50, 108). Officer Donohue saw defendant exit the building (T. 130-31). Officer Mullin knew defendant from a previous interaction and knew that he did not live in the building (T. 51). .
“Officer Donohue approached defendant and smelt a strong odor of marijuana. The officer asked defendant what he was doing in the building. Defendant replied that he was visiting someone on the first floor and pointed to the left side of the building (T. 132, 188). Officer Donohue asked defendant to step inside the vestibule so the officer could confirm that defendant was actually visiting someone (T. 133). . . .
“As Officer Donahue prepared to knock on the door of the apartment defendant claimed he visited, Donahue observed defendant drop a bag of marijuana to the floor (T. 135). . . . “Defendant then changed his story and told the officer that he was visiting someone upstairs and offered to get the person (T. 136). Despite Officer Donohue telling defendant to sit down, defendant turned and ran up the stairs (T. 137). Officer Donohue chased defendant up the stairs and caught him from behind (T. 137, 140). The men spun around and fell down the stairs back to the lobby floor (T. 140). Officer Donohue landed on his right side with defendant still in a bear hug (T. 142).
“Officer Donohue tried to arrest defendant, who was flailing his arms and trying to elbow and punch the officer (T. 142, 204).” (Brief for respondent in People v Lightfoot, 124 AD3d 802 [2015], available at 2014 WL 9887780, *4-6.)

. “A person is guilty of criminal possession of marihuana in the fifth degree when he knowingly and unlawfully possesses: 1. marihuana in a public place . . . and such marihuana is burning or open to public view” (Penal Law § 221.10 [1]).